# ISSUE SUMMONS

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

DR. KEENAN COFIELD, JD/Ph.D/Psy.D/DD
and The Supreme **_GRAND_** Bishop-Cofield
1236 KENDRICK RD.
ROSEDALE, MD 21237
EMAIL:psychdotor101@gmail.com
and Superemegrandbishop@gmail.com

## **MAILING ADDRESS:**

DR. KEENAN COFIELD
1236 KENDRICK RD.
ROSEDALE, MARYLAND 21237
443-554-3715

**CASE NUMBER: 24-C-24-000162**

LAVERNE THOMPSON-(85 year old Mother Victim)
1236 KENDRICK RD.
ROSEDALE, MD 21237

KAYLA NEDD
1236 KENDRICK RD.
ROSEDALE, MD 21237

LULUK NOVI FATWAMATI
3622 GREENMOUNT AVE.
BALTIMORE, MD 21218

QUEEN BILLY
1236 KENDRICK RD.
ROSEDAEL, MD 21237

KEVIN L. COFIELD, SR.
1236 KENDRICK RD.
ROSEDALE, MD 21237

ORIAN D. COFIELD
1236 KENDRICK RD.
ROSEDALE, MD 21237

ARVIETTE L. COFIELD
1236 KENDRICK RD.
ROSEDALE, MD 21237

PLAINTIFF(S)/CLAIMANTS

Vs

CASE AND CLAIM  NUMBER:**24-C**34-00062

RESIDENT AGENT:
THE CORPORATION TRUST, INC.
**PASSPORT MOTORS HOLDINGS, INC.**
2405 YORK RD.
SUITE 201
LUTHERVILLE, MD 21093-2264

**PASSPORT MOTORS HOLDINGS, INC.**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746

**PASSPORT NISSAN OF MARLOW HEIGHTS**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746

**PASSPORT MOTORCARS, INC.**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746,

**KOMI E. DOGBATSE, SALEPERSON**
**PASSPORT NISSAN OF MARLOW HEIGHTS**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746

**MR. CHESTER, GENERAL MANAGER**
**PASSPORT MOTORS HOLDINGS, INC.**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746

**JOHN & JANE DOE, STATE VEHICLE INSPECTIONS EMPLOYEES**
**PASSPORT MOTORS HOLDINGS, INC. & PASSPORT NISSAN OF MARLOW HEIGHTS**
5000 AUTH WAY
MARLOW HEIGHTS, MD 20746

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE**
6040 DUTCHMANS LANE
LOUISVILLE, KY 40205

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE MANAGEMENT CORP.**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE HOLDINGS, LLC.**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE, INC.**
8207 TOWN CENTER DR.
NOTTINGHAM, MD 21236

**USPS**
900 E. FAYETTE STREET, RM 118
**ATTN: CLAIMS & LEGAL DEPARTMENT**
BALTIMORE, MD 21233

**USPS-HEADQUARTERS**
470 L'ENFANT PLAZA SW SUITE 604
WASHINGTON, DC 20024

**UNITED STATES POSTAL SERVICE**
**DOMESTIC CLAIMS**
PO BOX 80143
ST. LOUIS, MO 63180-0143

**USPS**
5600 SPALDING DR.
PEACHTREE CORNERS, GA 30092

**ATHENS PROGRAM INSURANCE SERVICES**
**C/O SHANNON REGISTER, CLAIMS SPECIALIST**
PO BOX 4111
CONCORD, CA 94524

**ATHENS PROGRAM INSURANCE SERVICES**
**C/O ATHENS ADMINISTRATORS**
PO BOX 4111
CONCORD, CA 94524

**ALLIED WORLD SPECIALTY INSURANCE COMPANY**
**ATHENS ADMINISTRATORS**
1690 NEW BRITAIN AVENUE, SUITE 101
FARMINGTON, CONNECTICUT 06032-2576

**TEXAS ROADHOUSE, INC.**
8207 TOWN CENTER DR.
NOTTINGHAM, MD 21236

**TEXAS ROADHOUSE OF BALTIMORE COUNTY, MC LLC**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**TEXAS ROADHOUSE MANAGEMENT CORP.**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE OF BALTIMORE COUNTY, MC LLC**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**CSC-LAWYERS INCORPORATING SERVICE**
**C/O TEXAS ROADHOUSE**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**SERVE ON: ALL USPS DEFENDANTS**
**UNITED STATES ATTORNEYS OFFICE**
**U.S. ATTORNEY GENERAL**
36 S. CHARLES STREET
BALTIMORE, MD 21201

## ADDED DEFENDANTS:

1). **RESIDENT AGENT:**
**THE CORPORATION TRUST, INC.**
**C/O ALLY FINANCIAL, INC.**
2405 YORK RD.
SUITE 201
LUTHERVILLE TIMONIUM MD 21093-2264

2). **RESIDENT AGENT:**
**THE CORPORATION TRUST, INC.**
**C/O ALLY FINANCIAL, LLC**
2405 YORK RD.
SUITE 201
LUTHERVILLE TIMONIUM MD 21093-2264

3). **RESIDENT AGENT:**
**THE CORPORATION TRUST, INC.**
**C/O ALLY FINANCIAL, INC. & PASSPORT MOTORS HOLDINGS, INC.**
2405 YORK RD.
SUITE 201
LUTHERVILLE TIMONIUM MD 21093-2264

4). **RESIDENT AGENT:**
**THE CORPORATION TRUST, INC.**
**C/O ALLY FINANCIAL, LLC & PASSPORT MOTORCARS, INC.**
2405 YORK RD.
SUITE 201
LUTHERVILLE TIMONIUM MD 21093-2264

5). **ALLY FINANCIAL, INC. & ALLY FINANCIAL, LLC**
500 WOODWARD AVENUE
DETROIT, MI 48226

6). **ALLY FINANCIAL, LLC**
2405 YORK RD.
SUITE 201
LUTHERVILLE TIMONIUM MD 21093-2264

**NEWLY ADDED ADDITIONAL DEFENDANTS:**

1). **SERVE ON: ALL LISTED U.S. GOVERNMENT AGENCIES**
**UNITED STATES ATTORNEYS OFFICE**
**U.S. ATTORNEY GENERAL**
36 S. CHARLES STREET
BALTIMORE, MD 21201

2). **SOCIAL SECURTY ADMINISTRATION-SSA**
**C/O US ATTORNEYS OFFICE**
36 S. CHARLES ST.
BALTIMORE, MD 21201

3). **INTERNAL REVENUE SERVICE (IRS)**
**C/O US ATTORNEYS OFFICE**
36 S. CHARLES ST.
BALTIMORE, MD 21201

4). **SOCIAL SECURTY ADMINISTRATION-SSA**
**C/O US ATTORNEYS OFFICE-SSA GENERAL COUNSEL**
1100 WEST HIGH RISE
6401 SECURITY BLVD.

5). **INTERNAL REVENUE SERVICE (IRS)**
**C/O US ATTORNEYS OFFICE**
1111 CONSTITUTION AVE. NW
WASHINGTON, DC 20224

6). **CONSUMER FINANCIAL PROTECTION BUREAU**
**US ATTORNEYS OFFICE**
36 S. CHARLES STREET
BALTIMORE, MD 21201
**and**

**FEDERAL TRADE COMMISSION**
C/O US ATTORNEYS OFFICE
36 S. CHARLES STREET
BALTIMORE, MD 21201

THE PRENTICE-HALL CORPORATION SYSTEM, MARYLAND
**THE UNITED STATES CORPORATION COMPANY-RESIDENT AGENT**
7 ST. PAUL STREET
BALTIMORE, MD 21202

**EQUIFAX INFORMATION SERVICES, LLC**
1550 PEACHTREE ST, NW
ATLANTA, GA 21202

**RESIDENT AGENT**
CSC-LAWYERS INCORPORATING SERVICE COMPANY
**C/O EQUIFAX INFORMATION SERVICES, LLC**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**RESIDENT AGENT**
THE PRENTICE-HALL CORPORATION SYSTEM, MARYLAND
**C/O EQUIFAX INC.**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**EQUIFAX INC.**
32 SOUTH STREET
BALTIMORE, MD 21202

**EQUIFAX CONSUMER SERVICES, LLC**
7 ST. PAUL STREET
SUITE 820
BALTIMORE, MD 21202

**EQUIFAX CONSUMER SERVICES, LLC**
1550 PEACHTREE ST, NW
ATLANTA, GA 21202

**CONSUMER FINANCIAL PROTECTION BUREAU**
1625 Eye Street, N.W.
Washington, DC 20006
**and**

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Ave. NW
Washington, DC 20580

**T-MOBILE USA, INC.**
3650 131ˢᵀ. AVENUE SE ·
SUITE 200
BELLEVUE, WA 98006

**T-MOBILE USA, INC.**
12920 38ᵀᴴ STREET, SE
BELLEVUE, WA 98006

**T-MOBILE**
P.O. BOX 629025
EL DORADO, CA 95762

**RESIDENT AGENT**
**CSC-LAWYERS INC. SERVICE COMPANY**
**FOR T-MOBILE, INC.**
7 ST. PAUL STREET-SUITE 820
BALTIMORE, MD 21202

ALL DEFENDANTS OR RESPONDENTS ARE BEING SUED AND/OR CLAIMS FILED
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY-**KNOWN AND UNKNOWN/NAMED
OR UNNAMED**

## PRELIMINARY STATEMENT

1). The Plaintiffs assert that this Honorable Court has subject matter jurisdiction over the

persons, and parties included in this petition. This Complaint is to bring an action to

redress acts, conduct and/or practices of various forms of gross negligence, fraud

against the Defendants and others. This Court has jurisdiction over this case and

parties as to the acts and conduct described herein, **set forth herein**.

2).                     **PROCEDURAL AND FACTUAL BACKGROUND**

On or about the 31ˢᵗ day of March, 2021 thru 14ᵗʰ day of May, 2021 to date, the Claimant

purchased a 2011 Mercedes Benz USED R-Class vehicle with **VIN#4JGCB5HEXCA146274.**

3). The Plaintiff Cofield used the product or vehicle described above in a reasonably foreseeable manner; and the brakes totally failed as a result of the vehicle having replaced with the WRONG rotors on the rear of the Claimants vehicle, that carried a failed or faulty inspection.

4). The Plaintiff/Claimant Dr. Cofield suffered serious to permanent injuries as described below and his Mother LaVerne Thompson suffered minor pain and suffering, injuries or harm as a result of the defect or failure to inspect the vehicle and all inspection items as required by law before the vehicle was sold. The Plaintiff Cofield used the product or vehicle described above in a reasonably foreseeable manner; and the brakes totally failed as a result of the vehicle having replaced with the WRONG rotors on the rear of the Claimants vehicle, that carried a failed or faulty inspection. The Plaintiff(s) do hereby adopt and incorporate **COUNTS 1 thru 6**, in further support of **COUNT 12**, and says:

The Plaintiff/Claimant Dr. Cofield suffered serious to permanent injuries as described below and his Mother LaVerne Thompson suffered minor pain and suffering, injuries or harm as a result of the defect or failure to inspect the vehicle and all inspection items as required by law before the vehicle was sold. The Amended and/or ADDED Defendants Ally Financial, knew and/or should have known that the vehicle before financing the same was fit to be operated in good to fair condition. These Defendants financed a vehicle that almost killed the Plaintiff(s) Cofield and Thompson that caused permanent injury to Dr. Cofield, but caused a hardship as defined and described in the ORIGINAL/VERIFIED complaint as to the personal expenses paid to repair the vehicle several times and the permanent injuries in financing a vehicle that had a fraudulent state vehicle inspection, which would have discovered that the vehicle had the rotors changed, and someone placed by FORCE, the wrong rotors, which caused the brakes to totally fail

causing serious bodily injuries for life. **The Plaintiff Dr. Keenan Cofield for the past 11 to 15**

years off and on has been the victim of massive Identity Fraud and Theft, when many

unknown and unnamed individuals has gained access and used in an illegal and unauthorized

manner the Name, DOB, Social Security Number, addresses, and MD Drivers License of

Plaintiff Dr. Keenan Kester Cofield to file for SSA and IRS tax benefits, numerous tax refunds

request have been made in recent years, to include, individuals filing for State

Unemployment benefits from Maryland to Oregon. The IRS and Social Security has failed and

neglected to protect my information, even with a fraud alert, individuals are able to make IRS

tax refunds requests successfully, causing a hardship upon the Plaintiff Cofield who is unable

to make any personal tax claims or anyone else I authorize to make a yearly tax claim,

because the scammers and fraudsters have already made a claim and received money or

benefits in my name under may Social Security Number, and DOB, etc. ,any times over the

years. The Plaintiff Cofield has filed Complaints several times with Baltimore County, MD

Police, MD State Police, IRS and SSA to NO avail. The Plaintiff Dr. Keenan Cofield, Name but

more specifically my social security number, and drivers license have all been compromised

to further obtain and change credit cards, bank accounts, all and more the fraudsters have

been and continue to be able to use my name, identity, social security and drivers license

number like it's FREE. This Plaintiff has suffered economic hardship MENTAL pain and

suffering as an end result of no action by these Government agencies to change the Social

Security Number and drivers license and other online data in the Plaintiff(s) name. The SSA

Defendants have received multiple ALERTS that they believe the Plaintiff Cofield was filing

and that someone else has and continues to file fraudulent unemployment claims, to tax

refunds, open bank accounts and the list goes on and on. They ONLY way to make any adjustment is to CHANGE the Social Security Number of Plaintiff Cofield and his MD Drivers License, and his current social security number be shut down and purged from the system. Exhibit A, page two is a letter from SSA, this is the second such letter or notice I have received from this agency that my name and information has ALERTED SSA that I allegedly filed for UNEMPLOYMENT. Never have I ever filed for any unemployment benefits. Exhibit B, is a 2021, letter from the IRS about an alleged but fraudulent tax refund, which again, I never made NO such claim. Someone fraudulently filed taxes under my Social Security Number this year causing me unable to be claimed myself. Exhibit-C, is an *IRS Identity Theft Affidavit* faxed (2) times to the IRS with attachments. As of this date, never received a call and/or letter. Exhibit D, is a letter and/or documentation from the IRS, whereas someone filed taxes back 2013 in my name. Exhibit E, is copies of various letters from the State of Oregon about unemployment. Plaintiff Cofield has never travelled to or worked in that state. The Plaintiff now finds it necessary as his credit has been affected as well as other issues from the fraudsters using my identity, name, DOB, address, social security name and MD license all have been completely compromised beyond repair.

## STATEMENT OF THE CASE, FACTS AND CLAIMS
### COMPLAINT AND COUNT ONE-NEGLIGENCE

5). **COME NOW** the Plaintiff(s) Dr. Keenan Cofield, the Supreme GRAND Bishop, and his mother (LaVerne Thompson) and for the cause of action state as follows:

### CAUSES OF ACTION

6). Beginning on or about the 24th day of September, 2021, the Defendants, Respondents, and/or employees, managers, staff, workers, and other officials of

Passport Nissan, Passport MotorCars, Inc. and others thereof, individually, separately and/or jointly, did knowingly, willingly, purposely, negligently, commit some acts or conduct with negligence, malice, deliberate indifference, did commit and/or caused or allowed thereto, to sell a vehicle described above with faulty and/or defective rotors and brakes that failed causing permanent injuries and bodily damages to Claimant Dr. Cofield for life, and did so **without** any or proper inspection of the brakes, rotors on the rear of the vehicle as required by State law, selling a motor vehicle falsifying and/or forging with the intent to deceive the vehicle owner injured the MD Vehicle Inspection Forms committing a fraud that the rotors, brakes and other mechanical products were in excellent condition and the vehicle had passed inspection, knowing that not to be or should have known it to be false.

9). At all times herein mentioned Plaintiff(s) and/or Claimant Dr. Keenan Cofield vehicle was operated in a reasonable and prudent manner, with due caution and regard for the motor vehicle laws of the State of Maryland. **Defendants/Respondents Passport Nissan had a duty to Plaintiffs/Claimant Cofield and Thompson to act reasonably**. **Respondents Passport Nissan breached that duty**.

10). Plaintiff(s) suffered injuries because of the WRONG rear rotors of vehicle.

11). At all relevant times, Plaintiff(s) exercised due care for Plaintiff Cofield and his mother (LaVerne Thompson) safety.

12). As a direct and proximate cause of the negligence of Defendants/Respondents Passport Nissan and its agents, employees action, Plaintiffs suffers from permanent physical injuries, conscious mental anguish, pain and suffering in the past and in the future, past medical expenses and future medical expenses.

and

12a). All of the above damages were directly and proximately caused by the aforementioned negligence of Defendants/Respondents Passport Nissan, and were incurred **without** contributory negligence, or assumption of the risk on the part of Plaintiff/Claimant Cofield, or an opportunity for Plaintiff/Claimant Cofield to avoid the accident.

# 13). On **September 24, 2021 @ 3:00 on Pulaski Hwy.**

**(SECOND MVA)-**Vehicle history-The Injured party Dr. Keenan Cofield, purchased a 2012 Mercedes-Benz/R-Class. The vehicle was allegedly State inspected. The vehicle was purchased from PASSPORT NISSAN, Suitland, MD. 301-423-8400. For several weeks after purchase of the vehicle, there was rear noises with the brakes. After many weeks and phone calls to the dealership, I was able to get the vehicle inspected and determined the rear brakes needed **Both rear brake rattle clips**. The repairs occurred on 05/28/21. **Not known at the time, the rear brake rattle clips needed to be changed because of the wrong rotors on the rear of the alleged inspected and faulty sold vehicle.**

14). The noise returned, but not as bad on both sides. On September 24, 2021, at around 3:00 pm on Pulaski Hwy. My 82 year old mother (LaVerne Thompson) was in the vehicle. The brakes failed totally, so immediately as a trained first responder, I located a soft landing spot to stop and slow down the vehicle. I took the vehicle to a high curb causing the greater impact to be on the left or driver side, used my forearm to brace myself against the steering wheel and hit the curb causing my head, neck and other body parts to make a whip lash or neck popping movement, rocking or snapping back and forth quickly. There was NO immediate discomfort **until** hours later when I could not move. I applied various medications to the affected areas and took pain and other meds until I could be seen. My FIRST medical exam for the second MVA was 09/27/2021.

## **TOTAL BRAKE FAILURE-WITH INJURIES**

15). On 09/29/2021, the vehicle was taken to MONRO BRAKE CENTER on 7870 Eastern Ave. Baltimore. Before any repair work was done pictures were taken at various angles while the brakes what was left were still intact. MONRO determined and placed in their Invoice and notes that the vehicle brakes failed on both sides and the rear right caliper piston failed and the right side rear brake pad was totally missing which can be seen in photos taken. I was in possession of those original brakes as evidence. The total costs for those total REAR brakes, new rotors repair was **$1,068.70**, and **$799.94** for the FRONT brakes and new rotors.

16). Because of wear and tear on front brakes and rotors due to rear problems the front brakes and rotors had to be fully replaced.

17). On 11/06/2021, Mr. Chester General Manager of Passport Nissan denied my claim just relating to the reimbursement of my expenses.

18). The MVA caused me to miss two Federal bankruptcies and civil case deadlines because I **was not** able to prepare responses as Ordered by those Judges, to date. Millions of dollars were at stake. Additionally, I have lost tens of thousands to several hundred thousand in contracts dollars and various works directly from the September 24, 2021 MVA accident. Some of my injuries are permanent with the pains and I may *never* be the same. Including not being able to drive or the fear of driving haunts me, always wondering of the brakes will fall again. Often my daughter and/or brother drive me to most places.

19). As indicated previously I am totally unable to work or function at all at **any** level. Preparing this took me almost a week or more finding the strength was not easy, and the assistance of my Clerk. **A Claim and accident report was made to GEICO my insurance carrier.**

# CURRENT AND ON-GOING LISTINGS OF PRIMARY, TREATING, EXAMINING AND MEDICAL SPECIALISTS WITH NUMBER OF VISITS OF PATIENT DR. KEENAN COFIELD ASSOCIATED WITH OR SUSTAINED FROM MVA PERMANENT INJURIES AND IMPAIRMENTS

20). Dr. Cofield has (22)-visits to *Physical Therapy*- **Cofield is being treated for injuries to his Neck, back, lower back, TMJ, both right and left Shoulders and both hands.**

**NOTE: All treating and examining physicians recommended and have expanded PT six (6) times for various other parts of the body due to pain and need for further PT treatments.**

Dr. Cohen terminated and/or temporarily discontinued (PT) due to pain and further injury to Dr. Cofield **until** surgery is performed on both right and left rotator cuffs.

21). (25)--*Psych and Pain Management* visits—**Dr. Cofield has been diagnosed with PTSD, depression, anxiety, adjustment disorder, pain, Insomnia.** Dr. Cofield was prescribed Escitalopram 10MG Tablets for anxiety, depression, on or about **11/10/2021**, by Dr. C. Nwachukwu, at Aspire. Medstar Family Health Center upgraded patient Dr. Cofield psych referral is now being seen by Velma Viloria-Gragoa, MD (Psychiatrist) at MedStar Behavioral Health Center beginning **01/14/2022**. (1)-Visit… Dr. Viloria-Grageda, concurred with the diagnoses of Aspire psych officials. Dr. Viloria prescribed Trazodone 50mg *every* night for depression and sleep for Dr. Cofield.

22). *Neurology* (8)-visits—**Dr. Deidre J. Ammah, MedStar Neurologist** ruled and diagnosed Dr. Cofield with radiculopathy/cervical region, neuropathy, abnormal NCS & EMG, Cofield has severe to permanent damage to tendons, nerves and muscles upper body, herniated and bulging discs . In ability to HOLD items in either hand can be difficult at any time, caused from MVA. Numbness, tingling and swelling of both hands occurred after the accident and no previous issues prior thereto. **Surgery is required for the C-3, C-4, C-5, C-6, and C-7 discs.**

**Dr. Ammah, MD referred Dr. Cofield to Dr. Zeena Dorai, a neck and spine specialist for further evaluation, on 12/13/2021, for 01/27/2021 exam.**

23).   **PATIENT SLEEPS IN CHAIR BECAUSE OF VARIOUS PAINS & INJURIES**

Patient Dr. Cofield is unable to sleep in his bed any longer due to his injuries from MVA pains suffered and sustained.

24). *Orthopedic* (8)-visits—**Dr. Alaee, MD, a MedStar orthopedic specialist,** diagnosed Dr. Cofield with Complete rotator cuff tear of left shoulder. Dr. Alaee, injected Dr. Cofield with a corticosteroid injection in left shoulder. Since this report, Dr. Cofield was ordered a MRI in the Right shoulder due to severe pain recently and it appears there is tendon tear and damage to the right side.

**Dr. Alaee,** determined that the first MVA on or about 07/20/2021 caused damage to the Left rotator cuff. It is possible the first MVA accident caused rotator cuff damage and injuries to Cofield on both Right and Left sides of shoulders and arms. A MRI determined the Right shoulder findings indicated rotator cuff injury, right shoulder.

25). *Orthopedic Surgeon*- **(4) visit-Dr. Cohen**
Was examined by Dr. Cohen Orthopedic Surgeon on 12/22/21, who confirmed the rotor cuff tear on the Right side Shoulder, as well as the left. Dr. Cohen administered a cortisone shot or injection into my right shoulder for pain.

26). *ENT/TMJ injury*- (4) visit—**On 11/30/21, Dr. Alan H. Shikani, ENT specialist examined Dr. Cofield due to swelling and often lockjaw on left side. Dr. Shikani, fully examined Cofield and immediately determined Dr. Cofield had a permanent TMJ injury stemming from the Second MVA on September 24, 2021. The Family Health Center referred Dr. Cofield to the ENT Center for further evaluation for TMJ. Follow-up on 12/30/21.**

**NOTE: It was highly recommended that Dr. Cofield injuries are very serious and is a life changer as to his diet and many foods he can NO longer consume or eat.** Dr. Cofield can NO longer eat apples and many meats to foods which require chewing, is **prohibited** and will cause further permanent damage to the jaw.

27). *FAMILY HEALTH CENTER-AFTER* HOURS REPORTS-(13) calls or visits

28). **FRANKLIN SQUARE HOSPITAL (ER)** (4) visits

29). **Family Health Center**—visits--(19)-Received shot in Right arm due to severe pains, and unable to move arm, etc. on 12/08/2021. On 12/29/21, Dr. Pristell issued a indefinite NO work letter, for Dr. Cofield.

**SPECIAL DISABILITY OUT OF WORK REPORT--However on 12/22/2021, Dr. Kelsey Chmielewski, DO because of the MVA injuries and permanent damage to impairments, "the patient has limited use of upper extremities which interferes with functionality at work and he unable to return."**

30). **MedStar URGENT Care**—(8) visits

31). *Family Health Center*-OMT Clinic/Specialty Treatment-(5) visits---Dr. David Pierre, and Stephen C. Kane, diagnosed Dr. Cofield with the following:

Spasm of thoracic back muscle
Cervical somatic dysfunction
Somatic dysfunction of thoracic region
Somatic dysfunction of upper extremity region
Somatic dysfunction of lumbar region-All associated with MVA accident.

32). *Choice Pain & Rehab Center*-(1) visit-Dr. Cofield was seen and examined at Choice Pain & Rehab Center for a Second Opinion and further specialized treatment on 12/28/21. Because of back, neck and bulging & herniated discs Dr. Cofield will be seen for a *epidural injection* on 1/26/22. It has been recommended Dr. Cofield will require multiple surgeries to his discs beginning this year.

33). **MEDICAL DEVICE LISTINGS DUE TO MVA INJURIES AND PERMANENT DAMAGE**

**PLAINTIFF DR. COFIELD HAS MORE THEN 50 TO 125 or MORE VARIOUS ON-GOING AND CONTINIOUS MEDICAL TREATMENTS, CARE FOR PAINS, PERMANENT DAMAGES AS A**

**RESULT OF THIS ACCIDENT INCLUDING THE DISCOVERY OF POST CONCUSSION SYNDROME DIAGNOSES AND MILD STROKE ASSOCIATED WITH THIS MVA-As of 01/06/2024.**

**NOTE: Dr. Cofield has been prescribed the following medical devices for support due to his many injuries, impairments, and damages sustained as a result of a MVA, by Defendant/Respondents:**

1). Cervical Collar/Neck Brace-Wear at night
2). Back Brace
3). Both Hand Braces
4). Mouth Guard-at night-NEW-ENT Dr.
5). Left Arm Sling

## DAMAGES

## LISTINGS OF MEDICAL DIAGNOSES DUE TO MVA BODILY INJURIES AND PERMANENT DAMAGE TO IMPAIRMENTS RELATING TO MVA ON SEPTEMBER 24, 2021-BRAKE FAILURE-VEHICLE SOLD AND OPERATED WITH WRONG ROTORS ON REAR

34). Adjustment disorder with mixed anxiety and depressed mood-MVA
Adjustment disorder with disturbance of emotion-MVA
Anxiety disorder-MVA
Back spasm-MVA
Bulging & Herniated disc, cervical region, C-3-C-4, C-4-C-5, C-5-c-6, C-6-C-7-MVA
Carpal tunnel syndrome
Cervical disc disease-MVA
Cervical radiculopathy-MVA
Cervical stenosis of spine-MVA
Cervical somatic dysfunction-MVA
Complete rotator cuff tear of left shoulder
Depression-MVA

Epidural Injection for pain back/spine
Impingement syndrome, shoulder, Right-MVA
Impingement syndrome, shoulder, Left-MVA
Insomnia-MVA
Lumbar herniated disc
Lumbar radiculopathy
Motor Vehicle accident
Neck pain
Numbness and tingling of both right and left hands-MVA
Parenthesis of hands, bilateral
Permanent injury, damage or impairments to nerves, tendons, and muscles-MVA
PTSD-MVA
Rotator cuff tear of right shoulder-MVA
Shoulder pain, Right-MVA
Shoulder pain, Left-MVA
Sensorimotor neuropathy-MVA
Somatic dysfunction of thoracic region-MVA
Somatic dysfunction of upper extremity region-MVA
Somatic dysfunction of lumbar region-MVA
Shoulder pain, left-MVA
Spondylosis of cervical spine-MVA
Temporomandibular joint (TMJ) pain
Upper back pain-MVA

35). The Defendants or Respondents at Passport Nissan owed a duty of care to the claimant/vehicle owner, to be able to operate a used vehicle that is safe to operate in a reasonable and prudent manner.

36). The Crash and brake failures was directly and proximately caused by the negligence of Passport Nissan, their employees, staff, and others who's failure to inspect the vehicle the wrong rotors which caused the brakes to fail before selling of the vehicle the subject of this Claim.

37). Plaintiff(s) personal injuries were directly and proximately caused by Passport Nissan agents and employees negligence. Plaintiffs/Claimant suffered serious, painful

and permanent bodily injuries, great physical pain and mental anguish, serve emotional distress, as Plaintiff or Claimant Dr. Keenan Cofield is not able to go back to work and is precluded from engaging in normal activities and pursuits, including a loss of ability to earn any and actual earnings from his brand NEW non-profit organization, to other business interests, etc..

38). Defendants and/or Respondents of Passport Nissan is liable for Plaintiff(s) injuries and damages sustained, pain and suffering, and all other elements of damages allowed under the laws of the State of Maryland.

39). Defendants or Respondents of Passport Nissan and their agents thereof, conduct and actions evidence of bad faith, and negligence were and are stubbornly litigious, and have caused Plaintiff(s) undue expense. **THE PLAINTIFF IS WILLING TO REVIEW ANY FAIR AND REASONSABLE SETTLEMENT OFFER OR BEST OFFER TO END THIS PART OR PORTION OF THE COMPLAINT APPLICABLE TO THESE DEFENDANTS.**

### COUNT 2

### COMPLAINT FOR FAILURE TO PROPERLY TRAIN AND SUPERVISOR

40). The Plaintiff(s) do hereby adopt, reassert and incorporate paragraphs 1-39, in further support of **COUNT 2**, and says the following:

41). The Plaintiffs state that the Defendants **each** failed to train and/or properly train and Supervisor Defendants Respondents of Passport agents, employees of their policy and State laws which states and/or mandates that every time any vehicle before it is sold and released, **must** be inspected, according to state law. If the Respondents of

Passport had conducted a legally proper and accurate inspection of the rotors and brakes that would have discovered the vehicle was sold with the wrong rotors that caused total brake failure with serious and permanent injuries to Claimant Cofield for life.

## COUNT 3

### COMPLAINT FOR NEGLIGENT ENTRUSTMENT

42). The Plaintiff(s) do hereby adopt, reassert and incorporate paragraphs 1-41, in further support of **COUNT 3**, and says the following:

43). The injuries, harm, and damages were incurred by the Plaintiffs/Claimants as a result of the sale of a vehicle that had not been properly or legally inspected that had the wrong rear rotors on it which caused the rear brakes to totally fail and fronts brakes and rotors had to be replaced because of wear and tear from the back brakes.

44). The Defendants/Respondents knew, or should have known that Plaintiff/Claimant Dr. Cofield would likely to operate a motor vehicle they sold to Claimant that would or could operate in a faulty, negligent and reckless manner causing possibly serious or permanent injuries which is the case at bar.

45). As a direct result of Defendants/Respondents negligently entrusting the un or improperly inspected vehicle selling the defective vehicle to Plaintiff/Claimant Cofield, based upon falsified and/or false MD Motor Vehicle Inspection records such negligence caused serious and permanent bodily injuries to Claimant Dr. Cofield, who did suffer the injuries, damages, and harm as previously described in paragraphs 1-44 of this Claim.

### COUNT 4, 5 AND 6

### COMPLAINT FOR STRICT PRODUCT LIABILITY

## COMPLAINT FOR DEFECTIVE AUTO, BREACH OF WARRANTY, MOTOR VEHICLE WARRANTY, BREACH OF CONTRACT

46). The Plaintiff(s) do hereby adopt, reassert and incorporate paragraphs 1-45, in further support of **COUNT 4**, and says the following:

47). At all ties mentioned in this Claim or Complaint, the motor vehicle described herein and later sold to Plaintiffs/Claimant with defective rear rotors and brakes as to the wrong rotors were placed on the vehicle when the last owner and/or Respondents needed to repair the vehicle, causing the vehicle, rear brakes and rotors to be in a dangerous and defective condition that made the vehicle unsafe for their intended use and sale.

48). As a direct and proximate result of the wrong rotors on the rear of the above described vehicle with defective rotors causing a total break failure, Plaintiff/Claimant suffered serious injuries, damages, as outlined above herein which caused or resulted in loss of wages, pain and suffering, permanent disability, medical expenses and mountains of losses in the millions of dollars. Plaintiff/Claimants was damaged by said defects. Plaintiff/Claimant was damaged by said breach of the implied warranties and is entitled to recover therefor. The Respondents of Passport Nissan failed to repair the defects and/or properly inspect the vehicle before it was sold as is as the express warranties and contracts were breached causing the defects to cause serious to permanent injuries to Plaintiff/Claimant, therefor causing the warranties to fail to perform and protect the Claimant Cofield, or fulfill the intended purpose, and the Plaintiff/Claimant Dr. Cofield has consequently been damaged, and Plaintiff pr Claimant is entitled to recover.

49). The Defendants/Respondents failed to and had several opportunities to cure or fix the defects. The Defendants/Respondents of Passport Nissan failed to make the vehicle for the purpose for which it was sold and intended, was sold as is with the wrong rear rotors that caused serious and permanent injuries to Dr. Cofield for life.

**Claimant has the original photos of the vehicle before, during and after the brakes were removed in a safe secured location. Claimant also has photographs of the entire location of the brake failure and mountains of medical reports, MRI's and other reports are continuing in nature. Plaintiff/Claimant also has photographs that show when the brake likes came on and brake fluid levels at time of brake failure and accident.**

50).                      ## COUNT 7, 8, 9, and 10
### JOINT STATEMENT OF THE CASE AND FACTS
### COMPLAINT FOR STRICT PRODUCT LIABILITY/COMPLAINT FOR
### NEGLIGENCE/BREACH OF WARRANTY/BEACH OF CONTRACT &
### NEGLIGENCE PER SE

51). The Plaintiff(s) do hereby adopt, reassert and incorporated paragraphs 1-56, in further

support of **COUNTS 7, 8, 9, AND 10**.

### The Salmonella Bacteria/Food Poisoning

52). Salmonella and/or Food Poisoning is the second most common intestinal infection in the

United States. More than 7,000 cases of *Salmonella* were confirmed in 2009; however, most

cases go unreported. The Centers for Disease Control and Prevention estimates that over 1

million people in the U.S. contract Salmonella each year, and that an average of 20,000

hospitalizations and almost 400 deaths occur from Salmonella poisoning, according to a 2011 report.

53). Salmonella infection usually occurs when a person eats food contaminated with feces of animals or humans carrying the bacteria. Salmonella or food poisoning outbreaks are commonly associated with eggs, meat, and poultry, but these bacteria can also contaminate 7other foods such as fruits and vegetables. In this case, it was fairly uncooked contaminated beef that had been exposed, for many days or hours before it was cooked or prepared.

54). Symptoms of Salmonella infection, Salmonellosis, or food poisoning, range widely and sometimes absent altogether. The most common symptoms include diarrhea, abdominal cramps, and fever. The Plaintiff Nedd had all those including back pains, nausea, vomiting, headaches, body aches, which began around 2 to 4 hours after attempting to each the contaminated foods or steak, on the evening on or about the 2nd day of April, 2022. Typical Symptoms of food poisoning or Salmonella appear 6 to 72 hours after eating contaminated food and last for 3 to 7 days. **The incident and accident occurred in Baltimore County, MD the Defendants Nottingham location at White Marsh.**

55). Plaintiff Kayla Nedd, contacted me Dr. Keenan Cofield about what she had ate, the pain and discomfort, the headache and other symptoms intensified and increased. Kayla was first taken to Franklin Square Hospital in (Baltimore) on April 3, 2022, for treatment for complications from Salmonella, gastroenteritis. Various tests were conducted, Zofran 4mg oral tablet was ordered. **I took Kayla to the ER.**

56). The Plaintiff missed 4 plus day worth or work at over $100 a day.

57). Plaintiff Nedd continued to have complications and sickness, which now required a
SECOND visit to URGENT care on April 5, 2022, for further evaluations as all noted pains,
suffering was persistent and Kaylas pain was unbearable. The doctors at URGENT CARE
concluded Kayla suffered and had contracted food poisoning. Plaintiff Ned stayed in my care for
almost a week because she was unable to care for herself.

## STRICT LIABILITY

58). The food product at issue in this suit was designed, manufactured, constructed, marketed,
prepared and cooked and/or distributed by and through the Texas Roadhouse Defendants and
other agents on their behalf.

59). The food product in question remained unchanged from the time it was originally
manufactured, distributed, and sold by the Defendants until it reached Kayla Nedd. The product
and conditions were defective and in an unreasonably dangerous condition when it left, but
was not properly stored, prepared and cook when it was in the hands of the Defendants named
herein Texas Roadhouse and always remained defective and further unreasonably dangerous
thereafter after the Plaintiff took photos of where this steak was exposed until it ultimately
caused the Plaintiff damages.

60). At the time the steak food product left control of the Defendants Texas Roadhouse, it was
defective and unreasonably dangerous in that it **was not** adequately manufactured, prepared,
cooked to minimize the risk of injury or death.

61). The above unreasonably dangerous defects, among others, in the product in question were
the proximate and producing cause of the Plaintiff Nedd damages.

## NEGLIGENCE/NEGLIGENCE PER SE

62). Defendants owed a duty to the Plaintiff to take reasonable care to prevent the manufacture, distribution, and sale of food products contaminated with Salmonella, E. Coli, or other foodborne pathogens. The Texas Roadhouse Defendants owed a duty to the Plaintiff to maintain their premises, equipment, and facilities, and supervise their foods and employees, in a reasonable manner to prevent the contamination of the food products they store, cook, prepare for sale and distribution. Defendants owed a duty to the Plaintiff to comply with all applicable laws and regulations relating to the manufacture, distribution, and sale of food, requiring that such food be FREE of pathogens, and unadulterated.

63). Defendants breached these duties. The breach of these duties was the proximate cause of the Plaintiff's Nedd injuries. Plaintiff Nedd was among the class of persons, namely consumers, intended to be protected by laws related to the manufacture, distribution, and sale of food that was free from pathogens and unadulterated. **THE PLAINTIFF NEDD IS WILLING TO REVIEW ANY FAIR AND REASONSABLE SETTLEMENT OFFER OR BEST OFFER TO END THIS PART OR PORTION OF THE COMPLAINT APPLICABLE TO THESE DEFENDANTS.**

## COUNT 11
### NEGLIGENCE AND FRAUD
#### ALL U.S.P. S. AND UNITED STATES GOVERNMENT DEFENDANTS

64). On or about the 24th day of July, 2021, I purchased a Apple IPhone from T-Mobile, for the total price of $1,099.99. The package was mailed by 2-Day Priority with **TRACKING**

**NUMBER:9505511796611205751006.** The package was intended for Cheneye Frank. It was later determined the phone had been stolen by an unknown person appeared and **was not** questioned, and the package was given to a thief. A local police report, and report was filed with the USP Inspector Offices. The Plaintiff Dr. Cofield filed a timely claim. It was denied. These Defendants were negligent in their actions in allowing some unknown person take possession of the package and the intended person never received the phone. The Plaintiff replaced the phone at his own expense, but was afraid to resend the phone a second time because of fear it would not make it again to the intended person.

**WHEREFORE**, the Plaintiff seeks judgment for losses, damages, theft which is a crime and for pain and suffering and inconvenience in the amount of $12,000 dollars in Compensatory Damages and $75,000 in Punitive Damages against the U.S. Defendants, or **BEST OFFER. The Plaintiff Cofield is willing to review and consider any reasonable and fair settlement offer by these U.S. government Defendants.**

# COUNT 12

65). The Plaintiff Cofield used the product or vehicle described above in a reasonably foreseeable manner; and the brakes totally failed as a result of the vehicle having replaced with the WRONG rotors on the rear of the Claimants vehicle, that carried a failed or faulty inspection. The Plaintiff(s) do hereby adopt and incorporate **COUNTS 1 thru 6**, in further support of **COUNT 12**, and says:

The Plaintiff/Claimant Dr. Cofield suffered serious to permanent injuries as described below and his Mother LaVerne Thompson suffered minor pain and suffering, injuries or harm as a result of

the defect or failure to inspect the vehicle and all inspection items as required by law before

the vehicle was sold. The Amended and/or ADDED Defendants Ally Financial, knew and/or

should have known that the vehicle before financing the same was fit to be operated in good to

fair condition. These Defendants financed a vehicle that almost killed the Plaintiff(s) Cofield and

Thompson that caused permanent injury to Dr. Cofield, but caused a hardship as defined and

described in the ORIGINAL/VERIFIED complaint as to the personal expenses paid to repair the

vehicle several times and the permanent injuries in financing a vehicle that had a fraudulent

state vehicle inspection, which would have discovered that the vehicle had the rotors changed,

and someone placed by FORCE, the wrong rotors, which caused the brakes to totally fail

causing serious bodily injuries for life.

# COUNT 13
# COMPLAINT FOR NEGLIGENCE, FRAUD, IDENTITY FRAUD, ID THEFT, VIOLATION OF PRIVACY ACT, ETC. AGAINST SSA AND IRS, JOINTLY

66). The Plaintiff Dr. Keenan Cofield for the past 11 to 15 years off and on has been the victim

of massive Identity Fraud and Theft, when many unknown and unnamed individuals has

gained access and used in an illegal and unauthorized manner the Name, DOB, Social Security

Number, addresses, and MD Drivers License of Plaintiff Dr. Keenan Kester Cofield to file for

SSA and IRS tax benefits, numerous tax refunds request have been made in recent years, to

include, individuals filing for State Unemployment benefits from Maryland to Oregon. The IRS

and Social Security has failed and neglected to protect my information, even with a fraud

alert, individuals are able to make IRS tax refunds requests successfully, causing a hardship

upon the Plaintiff Cofield who is unable to make any personal tax claims or anyone else I

authorize to make a yearly tax claim, because the scammers and fraudsters have already

made a claim and received money or benefits in my name under may Social Security Number,

and DOB, etc. ,any times over the years. The Plaintiff Cofield has filed Complaints several

times with Baltimore County, MD Police, MD State Police, IRS and SSA to NO avail. The

Plaintiff Dr. Keenan Cofield, Name but more specifically my social security number, and

drivers license have all been compromised to further obtain and change credit cards, bank

accounts, all and more the fraudsters have been and continue to be able to use my name,

identity, social security and drivers license number like it's FREE. This Plaintiff has suffered

economic hardship MENTAL pain and suffering as an end result of no action by these

Government agencies to change the Social Security Number and drivers license and other

online data in the Plaintiff(s) name. The SSA Defendants have received multiple ALERTS that

they believe the Plaintiff Cofield was filing and that someone else has and continues to file

fraudulent unemployment claims, to tax refunds, open bank accounts and the list goes on

and on. They ONLY way to make any adjustment is to CHANGE the Social Security Number of

Plaintiff Cofield and his MD Drivers License, and his current social security number be shut

down and purged from the system.

67). Exhibit A, page two is a letter from SSA, this is the second such letter or notice I have

received from this agency that my name and information has ALERTED SSA that I allegedly

filed for UNEMPLOYMENT. Never have I ever filed for any unemployment benefits. Exhibit B,

is a 2021, letter from the IRS about an alleged but fraudulent tax refund, which again, I never

made NO such claim. Someone fraudulently filed taxes under my Social Security Number this

year causing me unable to be claimed myself. **Exhibit-C**, is an ***IRS Identity Theft Affidavit*** faxed (2) times to the IRS with attachments. As of this date, never received a call and/or letter. **Exhibit D**, is a letter and/or documentation from the IRS, whereas someone filed taxes back 2013 in my name. **Exhibit E**, is copies of various letters from the State of Oregon about unemployment. Plaintiff Cofield has never travelled to or worked in that state. The Plaintiff now finds it necessary as his credit has been affected as well as other issues from the fraudsters using my identity, name, DOB, address, social security name and MD license all have been completely compromised beyond repair.

68). **WHEREFORE**, the Plaintiff Dr. Keenan Cofield seeks Judgment and Damages in the amount of **$5,000,000 in Compensatory Damages and $2,500,000 dollars in Punitive Damages** against each named Defendant herein, as to **COUNT 13**. That the Court Order IRS and SSA to delete and purge from its records the Plaintiff Dr. Keenan Kester Cofield name associated with Social Security Number 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, **permanently**, that the Social Security is FOREVER BLOCKED from any further uses and is no longer recognized by SSA, IRS or any other state to federal agency, is that social security number and other relevant information has been compromised, effective immediately. That the IRS and SSA shall fully RESTORE to the Plaintiff Dr. Keenan Kester Cofield, any and all benefits lost as a result of being a victim of ID fraud and the illegal and unauthorized use of his name, DOB, but more specifically his Social Security Number and MD drivers license.

69). That the Court shall enter an immediate TRO and/or Injunction, and/or any Declaratory Judgment to Orders to effective ensure this relief is carried out s set forth above and the Plaintiff Cofield is fully protected going forward. Order, that these Defendants did fail to protect the privacy rights and government information associated with Plaintiff Dr. Keenan Cofield, and

further violated the Plaintiff Cofield rights, from due process of law to equal protection of the law. **Plaintiff Dr. Keenan Cofield is willing to discuss and settle this matter with the United States government. Plaintiff seeks any and all other Relief this Honorable Court deem to grant and/or award to the Plaintiff Cofield as to Count 13 and others of the U.S. Defendants.**

## DAMAGES

70). As a result of their injuries, the Plaintiff **Nedd** seek monetary damages to compensate them for the following elements of damages:

a). The Plaintiff Nedd seeks Compensatory Damages in the amount of $150,000 dollars against the Texas Roadhouse Defendants and $250,000 dollars in Punitive Damages.

b). The Plaintiff Nedd seeks lost wages in the amount of $500.00.

c). Plaintiff Nedd seeks Pain and Suffer damages in the amount of $175,000 dollars against these same Defendants.

d). Reasonable and necessary medical care and expenses in the past, and/or that will incur in the future;

e). Physical pain and suffering in the past and/or in the future;

f). Mental anguish in the past and future in the amount of $75,000

dollars;

**80). Plaintiff(s) are willing to discuss any reasonable and fair**

**settlements offers.**

**81). DEMAND TRIAL BY JURY ON THIS COUNT AS WELL INVOLVING THESE DEFENDANTS.**

82).                    <u>**RELIEF REQUESTED**</u>

A). The Plaintiffs demand and seek judgment in their favor for **<u>$3,500,000 million</u>**

**<u>Dollars</u>** in **<u>Compensatory Damages</u> <u>against each</u>** Defendant(s) and **<u>$10,000,000</u>**

**<u>million Dollars</u>** in **Punitive Damages <u>against each</u>** Defendants named herein for

**<u>COUNTS 1-6, and 12</u>**, separately and independently. The negligence by these

Defendants caused a financial hardship upon the Plaintiff Dr. Keenan Cofield, leaving

him with permanent injuries and over $100,000 in medical bills and **have not** even had

the required multiple surgeries needed, which could run into the millions of dollars.

Request that these Defendants of Ally Financial pay the victims vehicle off in FULL and

correct any and all credit reports as PAID IN FULL in GOOD STATIS, OR BEST

OFFER. This is in addition to the RELIEF requested against this Defendants. The

Plaintiff has the original brakes and rotors taken off the vehicle, as well as the original

photos at each stage of the repairs conducted.


83).                    <u>**AMENDED RELIEF**</u>

B). Plaintiff(s)/Claimant Dr. Keenan Cofield and mother LaVerne Thompson demands against Passport Motors, and any and all other Passport Defendants to and is entitled to recover for and/or **BESTOFFER in the amounts set forth below:**

LaVerne Thompson **only** seeks damages for pain and suffering of **$25,000 dollars** for being 82 years old in the front passenger seat when the brakes failed.

Pain and Suffering-**MD Maximum-$905,000 dollars**
Personal injuries-**$15,000,000 dollars**
Past, present, and future pain and suffering-**$2,500,000 dollars**
Disability-**$20,000,000 dollars**
Emotional distress-**$5,000,000 dollars**
Disfigurement-**$15,000,000 dollars**
Mental Anguish-**$2,500,000 dollars**
Loss of capacity for the enjoyment of life-**$15,000,000 dollars**
Economic losses-$**2,000,000 dollars**
Incidental expenses-**$350,000 dollars**
Past, present, and future medical expenses-**$2,500,000 dollars**
Lost earnings-**$10,000,000 dollars**
Loss of earning capacity-**$10,000,000 dollars**
Permanent injuries-**$15,000,000 dollars**
Consequential damages-**$1,000,000 dollars**
Loss of Court Bankruptcy Orders and Court Judgments-Appeals, etc.-**$5,000,000 dollars**
**Repair Bills for brakes and rotors-$1870.00.**

C). **AMENDED ADDITIONAL RELIEF-Plaintiffs/Claimants demand that the Respondents of Passport Nissan fully pay off Claimants vehicle that is left on the loan pending. Approximately $15,000 dollars.**

D). **Medical bills are between $75,000 and $100,000 dollars plus and continuing for life.**

E). **DEMAND FOR TRIAL BY JURY ON ALL COUNTS, ALL ISSUES, ALL PARTIES PURSUANT TO MD RULES 2-503(a), and (b).**

F). The Plaintiff(s) and his mother losses were, are and will be due to the carelessness and negligence of Defendants/Respondents **Passport Nissan** employees, salespersons, and agents staff, **without** any negligence or want of due care on the Plaintiff(s) part contributing to harm done. Plaintiff Dr. Cofield is now a forced **disabled** psych doctor, personal injury & Domestic Urban Terrorism expert, International News Director and MD State Lobbyist.

**G). The Plaintiff(s) where applicable seek and DEMAND that this Complaint and/or Amended Complaint be treated as a Complaint for Injunctive Relief and Declaratory Judgment Relief, JOINTLY in invoked, under State and federal acts, jointly.**

**84). CONTINUED WITH COUNT 14....BELOW-ATTACHED**

## COUNT 14

84). Plaintiff(s) Dr. Keenan Cofield, ONLY, do hereby adopt each and every previous statement

made in the Original Complaint-COURTS JURISDICTION to now further Amend and/or

Supplement this section with the following and says, from paragraphs 1-83:

85). The Plaintiff(s) action now includes violations under the Sherman Antitrust Act 15 U.S.C. 1,

and 15, 18 U.S.C. 1961, et. seq., a federal crime for relief under 15 U.S.C. 1 and 15, and FTC Act,

15 US.C. 44, 15 U.S.C. 53(b), 1607(c), 1693(c), Section 5(a) of the FTC Act, 15 U.S.C. 45(a) and

the Lanham Act under section 32, 15 U.S.C. 1114, 1121, and 1125(a)(b)(c) and (d), state law

trademark dilution, and common law trademark infringement claims, 28 U.S.C. 1331, 1338,

unfair competition, MD state tradename violations and section 43(a) to obtain preliminary and

permanent injunctive relief, rescission and corrective advertising order for certain specific

Defendants TWITTER, to discontinue their unlawful acts of false advertising, willful copyright

infringement, wrong restraint of trade, unfair competition and deceptive trade practice in

commerce, restitution, Court's Order branding Defendant's advertising as false and misleading,

damages and other equitable relief for Defendants acts, practices and conduct violate state and

federal laws. This court has jurisdiction over the various Supplemental/Pendent State Claims,

Herein Defendants Twitter has and continues to aid and abet in an unlawful monopoly, by the

use of a materially false information that violates and infringes upon the copyrights,

trademarks, and tradenames and other protections in the names and/or intellectual properties

owned by the Plaintiff Cofield, and not Twitter. Defendants Twitter know and/or knew the

claims in question were false and has the design and intent to mislead, confuse, and deceive

the public, business world and commerce actors of its site. The Plaintiff(s) have also included

the **MD Lemon Law Act, Motor Vehicle Warranty Act, and the Magnuson Moss Act in the Original, and Amended Complaint, though not these Counts.**

### VIOLATIONS OF SECTION FIVE OF THE ACT

86). Section 5(a) of the FTC Act, 15 U.S.C. 45(a), "prohibits unfair and deceptive acts or practices in or affecting commerce. Misrepresentations or omissions of material facts necessary to prevent misleading consumers constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT 15

## Infringement of State and/or Federal Tradename, Trademark and Service Marks (Fraudulent Deceit, Deceptive Acts & Practices)

87). The Plaintiff(s) Dr. Keenan Cofield sets forth the following as to their Amendment and/or Supplemental of these Defendants to the **entire** [Original, Amended and/or Supplemental Complaints of Record jointly], to include **but not** limited to each and every allegation contained in paragraphs 1-84, as the same force and effect as if the allegations and claims were fully set forth incorporate these paragraphs below in further support of **COUNTS 14** and Defendants as mentioned and Amended, and says:

a). Plaintiff Dr. Keenan Cofield, Dr. Keenan Kester Cofield, also Sir. Lord Keenan Kester Cofield, who's name or names are properly and/or legally organized and recognized as a protected member of society, class, person and entity in the State of Maryland to federally registered in real and common law are names and marks in commerce to registered domain names and business names with EIN's, in connection with virtually all of its products and services, including search engines, and connections to and with the internet and world wide web.

b). The Defendants Twitter, Inc. knew and/or should have known the Plaintiff described herein had both actual and constructive knowledge of Plaintiff's ownership and rights in its state and federally registered names and marks prior to Defendants Twitter infringing use of and/or allowing other parties in an illegal and unauthorized manner access and the unlawful right to use those names and marks in violation of Plaintiff(s) tradename, trademarks and other copyright protections the Plaintiff enjoys in the same illegal used in a fake and illegal posting and Twitter advertising or advertisement, without the knowledge nor consent of the tradename, trademarks or copyright holder consent.

c). Defendants Twitter, Inc. adopted and continue to use in commence and/or allow other parties the right and access to use and infringe upon the property rights and intellectual property rights of the Plaintiff, even after contacting Twitter, Inc. Twitter took NO action to shut down and STOP further infringement of my name or names in any form. Defendants continued use with full knowledge and a complaint on file of the Plaintiff's Dr. Keenan Cofield superior rights, and doing so with the full knowledge that their infringing use of Plaintiff's marks and names was intended to harm, to cause confusion, mistake and/or deception.

d). Defendants Twitter, Inc. offer services as part of their search system under the infringing names and marks to include by other parties or persons in a fraudulent scheme that is likely to cause and did cause, confusion, mistake, deception of false or inaccurate misinformation or beliefs having the Plaintiff and general public to believe the same all with the intent to injure and harm the Plaintiff in connection with the scheme that violates 15 U.S.C. 1114 and other applicable state and federal statutes.

e). Defendants actions constitute knowing, deliberate, and willful infringement of Plaintiffs state and federally protected marks and rights. The knowing and intentional nature of the acts set forth herein renders this an exceptional vase under 15 U.S.C. 1117(a).

f). Defendants Twitter, Inc. have represented and/or misrepresented, directly or indirectly, expressly and by implication, the knowingly false statement and deceptive advertisement in the name and marks of the Plaintiff on their web site, through deceptive acts and practices infringed upon the tradenames, trademarks and/or copyright of the Plaintiff by false advertisement and unfair competition and commerce.

g). Therefore, Defendants Twitter, Inc. representations are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. Section 45(a) and willful restraint of trade and name, Sherman Antitrust Act, 15 U.S.C. 1 and 15.

As a result of Defendants infringements, Plaintiff Dr. Keenan Cofield and/or Sir. Lord Keenan Kester Cofield,, a name used recently in a HBO movie, has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in his common law and/or state to federally registered marks. This continuing loss of name, marks and goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has NO adequate remedy at law. Plaintiff Dr. Cofield will continue to suffer irreparable harm unless this Court enjoins Defendants conduct, and require the Defendants shut down the infringing content.

## STATEMENT OF THE CASE AND FACTS

88). An investigation has revealed that Defendant Twitter, Inc. is not a legally foreign and/or domestic legal entity, organization, company or corporation licensed and incorporated with

various filings to legally do business and operate within the State of Maryland. The MD

Assessment and taxation offices in Baltimore, Maryland have NO listings of Twitter, Inc. as a

foreign entity nor is there a required tradename application or permit on file and issued to

Twitter. (See Exhibit A)-As of this date, 05/02/2023, TWITTER is not and has not been in

GOOD STANDING TO DO BUSINESS IN MARYLAND FOR MANY YEARS.

89). **The Powers, Legal Authority, Jurisdiction to form and do any business, operate, function and engage in business in any state is based upon State laws, not federal, and the Articles of Incorporation, to By Laws of that entity, with also a tradename filing in that name in MD as a foreign or domestic entity, all filed and established with the State, completes the legal process for that entity to do business and operate within this State of Maryland. TWITTER, INC. has NO such filings nor rights to do any business or take any action for or against a protected class of consumers within the State of Maryland, to date, with or without written consent.**

90). Many months back, the Plaintiff(s) Dr. Keenan Cofield sent Twitter several messages

regarding this fake postings in his protected name. To date, Twitter **did not** as it promised

remove the illegal and unlawful content from its web site or search system.

91). Dr. Keenan Kester Cofield, Dr. Keenan Cofield, Sir. Lord Keenan Kester Cofield, Supreme

GRAND Bishop Dr. Keenan Cofield, and other related names are all tradenames, trademarks, or

parts of copyrighted works owned by Dr. Keenan Cofield. At NO time have I allowed, gave

written consent or any form of permission for Defendant Twitter or anyone else anywhere the

right, power or authority to use my tradename, trademarks in any form, message, fake news to

unauthorized content, posted on Twitters web site, without my knowledge, information nor

written consent that has infringed upon and is a direct violation of my tradenames, trademarks

and copyrighted works property rights.

92). With Defendants Twitter, Inc. permission without any disclaimer, notice or other contact,

Twitter, Inc. violated my intellectual property rights when they allowed some unknown person

to create a FAKE Twitter account that is libelous, false advertisement, on its website with

defamatory false content. The Plaintiff has never made any of the alleged statements craved

from this unknown source. The fake, illegal and unlawful Twitter account in and using my name

is illegal and violates and/or infringed upon my tradenames and trademarks and cannot legally

stand as valid, as the owner of the tradename, names and marks never gave Twitter or anyone

the right nor written consent to use it in this public worldwide forum.

93).

## COUNTS 16/COUNT 17/COUNT 18/COUNT 19/COUNT 20-JOINTLY

### (State & Federal Unfair Competition and False Designation of Origin)
### State and Federal Dilution By Tarnishment
### Violation of Anti-Cybersquatting Consumer Protection Act (Cyberpiracy)
### Violation of Maryland Unfair Competition & Consumer Sales Act
### Trademark Dilution
### MD-Trademark & Tradename Infringement
### Violation of The Lanham Act

94). Plaintiffs adopt each and every previous allegation and claim and reassert any and all

statements contained in paragraphs 1-54 as if fully set forth herein.

95). Defendants have deliberately, willfully and unlawfully used and/or allowed others to use

on its web site and platform his name, names and marks that violate the Plaintiff protected and

common law intellectual properties, without the written consent of the Plaintiff, with the grand

intent to confuse consumers and the public.

96). Defendants Twitters, Inc. unauthorized and tortious conduct has also deprived and will continue to deprive the Plaintiff of the ability to control the consumer perception of its products, services and names, placing the valuable reputation and goodwill of the Plaintiffs name in the dirty unclean hands of the Defendants Twitter, Inc.

97). Defendants conduct described herein is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants Twitter and their schemes and schemes of others illegally using the Plaintiffs name in a false advertisement or posting, with Defendant Twitter, Inc. approval, in violation of Section 43 of the Lanham Act, 15 U.S.C. 1125(a)(1).

98). Defendants had direct and full knowledge of Plaintiff Cofield's prior use of and rights in its marks and names before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. 1117(a).

99). The name and marks of Dr. Keenan Cofield and/or Sir. Lord Keenan Kester Cofield both in word and other forms are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment. Defendants Twitter, Inc. have injured and will continue to injure Plaintiff name and business reputation, have tarnished the distinctive quality of Plaintiff's famous name, marks and brand, and have lessened the capacity of the Plaintiff's famous name and marks use in violation of 15 U.S.C. 1125(c).

100). The Defendants have misused, infringed upon the registered domain names of the Plaintiff as described herein with their conduct. The Defendants Twitter, Inc. have used illegally privacy protection services that prevent the Plaintiffs from fully discovering through public available information the real names and entities or web addresses of the suspects pirates.

101). The Defendants Twitter, Inc. are using the Domain Names without the Plaintiff's authorization and with bad faith intent to profit from the Plaintiff's names and marks in violation of 15 U.S.C. 1125(d).

102). Plaintiff's name, names and marks are and were distinctive and famous at the time Twitter, Inc. and Doe Defendants infringed the Plaintiff's Domain Names, marks, tradenames, and marks until today.

103). Defendant Twitter, nor Doe Defendants did not believe and could not reasonably have believed their use of infringing the names, tradename, domain names or marks of the Plaintiff constituted fair use or was otherwise lawful.

104). Defendants Twitter, Inc. have conditioned the conduct, infringements, fraud, recurring and pre-authorized predicated acts, thereby violating the Lanham act 43(a), 15 U.S.C. 1051. The Act prohibits a number of activities, including infringement, dilution, and false advertising. The heart of the Lanham Act set out the remedies that can be sought when there is an infringement. These provisions can be used to restrict, through the use of injunctions, damages, corrective advertising, legal fees, and affords a court broad discretion to fashion equitable remedies that fairly compensate the Plaintiff.

105). Defendants Twitter, Inc. used and/or allowed or authorized others the right illegal to use false or misleading statements to hurt the Plaintiffs name and business, in interstate and intrastate commerce, and that the false statements and advertisements or fraudulent postings on Twitter, Inc. created harm personally and in name to business of the Plaintiffs by fraud, without written consent to use the name and/or marks of the Plaintiff, was deceptive and

violated the tradenames, ,trademarks and copyrights to intellectual property rights common or registered by the Defendants Twitter, Inc.

**WHEREFORE**, the Plaintiffs prays for an Order and Judgment as follows:

1). Entry of an Order (on a preliminary and permanent injunction) and/or TRO, requiring the Defendants Twitter, Inc, and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms or corporations in active concert or participation with them as to the conduct described herein be enjoined and restrained from the use or further use of any of the names, persons or entities of the Plaintiff(s), owned by the Plaintiff, unless created and established by the Plaintiff, which Sir. Lord Keenan Kester Cofield is a fake site, posting and false advertisement of the Plaintiffs name, brand, domain name and marks so protected.

a). Using the name or names, domain name or names in any manner **without** the written consent of the owner Dr. Keenan Cofield, in any form on Twitters web site, or business as promotional materials in any false and/or deceptive manner, is a violation and infringement of the Plaintiffs rights of his name and marks, is prohibited, and any such information and/or postings displaying the use of the name, marks or domain names of the Plaintiffs shall be immediately removed, without delay, from the Twitter, Inc. web site and business;

b). Ordering Defendants to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction to or arising from the use of Sir. Lord Keenan Kester Cofield, or Dr. Keenan Cofield names, marks, or domain names, etc. or otherwise in furtherance of the scheme alleged herein;

c). Ordering Defendants Twitter, Inc. pursuant to 15 U.S.C. 1116(a) to file with this Court and serve upon the Plaintiff(s) within thirty days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants Twitter, Inc. have complied with the injunction, including the ceasing of any and all postings and uses of the Plaintiffs name or names as referenced or further described in this Complaint.

d). The Plaintiffs seek damages and judgment be entered against Defendants Twitter, Inc. as to **COUNTS 14, 15, 16, 17, 18, 19, 20, <u>separately</u>** in the amount of $25,500,000 in Compensatory Damages, and $150,000,000 dollars in Punitive Damages. **Plaintiff(s) Demand Trial by Jury on these Counts jointly,** but separately from all others, these named Defendants are not named or involved in. That any settlement shall be FREE and clear. No taxes imposed upon the Plaintiffs for any settlement. **<u>Plaintiff Dr. Keenan Cofield is open for any settlement talks with these or any Defendants named herein in this case.</u>**

e). Ordering the Defendants Twitter, Inc. to pay any and all attorney's fees, expenses, costs, to include a judgment for enhanced damages under 15 U.S.C. 1117. The Plaintiffs are opened to discuss and settle any claims involving Twitter, Inc. at anytime.

f). Granting the Plaintiff's such other and further relief as the Court deems just and proper.

# COUNT-21

106). The Plaintiff(s) do hereby adopt and incorporate **COUNTS 1-20, and paragraphs 1-105,** in further support of this AMENDED COMPLAINT, and its RELIEF and AMENDED RELIEF, and says the following:

107). Plaintiff(s) **Kevin L. Cofield, Sr., Dr. Keenan K. Cofield, LaVerne Thompson, Orian D. Cofield, Arviette L. Cofield, Luluk Novi Fatwamati,**. All ("Plaintiffs"), individually and jointly, file this Complaint against Defendant Equifax Inc. ("Equifax"), Equifax Consumer Services, LLC, states as follows:

## PARTIES, JURISDICTION, AND VENUE

108). Plaintiff(s) **Kevin L. Cofield, Sr., Dr. Keenan K. Cofield, LaVerne Thompson, Orian D. Cofield, Luluk Novi Fatwamati, Arviette L. Cofield,** a natural person(s) and at all relevant times have been residing and/or doing business in Baltimore CITY, Baltimore County, and throughout State of Maryland and the United States of America. Plaintiff(s) are, and at all times relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c) and Md. Code. Ann., Com. Law § 13-101(c).

109). Defendant Equifax Inc., Equifax Consumer Services, LLC, et. al. is a corporation incorporated under the laws of the State of Georgia, with its principal place of business located at **1550 Peachtree Street NE, Atlanta, GA,** and doing business in the State of Maryland. Defendant Experian Information Solutions, Inc. is a foreign corporation authorized to do business in Maryland. Defendant is also a foreign corporation authorized to do business in Maryland. Equifax, Experian, and Transunion operates through various subsidiaries, and each of

these entities acted as agents of Equifax, Experian, and Transunion or in the alternative, acted in concert with Equifax, Experian and/or Transunion as alleged in this complaint.

110). Equifax, Experian, and Transunion is a "Consumer Reporting Agency" (or "CRA") as that term is defined by 15 U.S.C. § 1681a(f).

111). Equifax, Experian, and Transunion three of the "Big 3" consumer reporting agencies, All have a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of another consumer. In this case, representative of numerous others; Equifax, Experian and Transunion combined or mixed the credit files of the Plaintiff with a complete stranger with a similar name, and/or Plaintiff Kevin L. Cofield, Sr. into Plaintiff Dr. Keenan K. Cofield's credit files for many years resulting in a collection's, addresses, birthdate information among other account appearing in Plaintiff's credit reports that belonged to each Plaintiff or someone else.

112). Equifax, Experian and Transunion are also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.S.C. § 1681a(p).

113). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). **However, in the event of a REMOVAL, the Plaintiff(s) shall file an objection and contests any of the other Defendants named to this action and seek a REMAND as to ALL other Defendants and issues as described herein, which has been noted on the record in a separate filing.**

114). This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

115). Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiff(s) resides or do business within this District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax, Experian, and Transunion regularly conducts business in this District, and elsewhere throughout the United States.

## INTRODUCTION

116). The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), to ensure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy. The FCRA imposes duties on the CRAs to protect consumers' sensitive personal information.

117). FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information. Thus, through FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

118). A central duty that FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties. 15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes." To ensure compliance, CRAs must maintain

reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes. 15 U.S.C. § 1681e(a).

119). FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

120). FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.

121). FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft. Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency. 15 U.S.C. § 1681c-1. The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven years. 15 U.S.C. § 1681c-1(a)-(b). In the event a consumer requests "extended" protection, a consumer reporting agency must remove the consumer from any list of third parties to whom the agency sends the consumer's information to extend firm offers of credit, and keep the consumer off of any such a list for five years, unless the consumer requests otherwise. 15 U.S.C. § 1681c-1(b)(1)(B). After being notified of a fraud alert, a CRA must send

notification of the alert to the consumer reporting agencies which report information on a nationwide basis. 15 U.S.C. § 1681c-1(a)(1)(B); see 15 U.S.C. 1681a(p).

121). After fraud notification, FCRA provides the consumer additional rights to independently monitor their credit information to protect their privacy. Specifically, once notified of a consumer's fraud notification, a CRA must, within three days of the notification, provide the consumer with all of the disclosures required under 15 U.S.C. § 1681g. 15 U.S.C. §§ 1681c-1(a)(2), 1681c-1(b)(2). When a consumer requests that an "extended" fraud alert be placed on their files, the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g within the 12-month period following notification of a fraud alert. 15 U.S.C. § 1681c-1(b). Each of the Defendants have violated or failed to comply with the statutes or provisions of law cited above in this paragraph, that severely harmed, damaged or injured the Plaintiff(s) in life and while applying for credit.

122). Thus, through immediate review of the details of when, and for what purpose, a consumer's private information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen. And through semi-annual review of their consumer disclosures in the case of an "extended" alert, a consumer can periodically check to determine whether efforts to protect their identity after potential fraud have not been successful. Thus, FCRA presupposes that consumers subject to potential fraud should be permitted the immediate opportunity to investigate the issues themselves and ascertain the extent of any suspected fraud.

123). Plaintiff(s), individually and jointly, brings this action to challenge the actions of Defendant(s) in the protection and safekeeping of Plaintiff's and the personal information, reporting and refusal to correct disputed incorrect and inaccurate information, and/or update

credit information for months to years with combined or mixed the credit files of several

Plaintiff(s) as described above creating denial of credit based upon inaccurate reporting or

correction of reported information from many sources.

124). Defendants, failed to properly safeguard the information of Plaintiff(s) as required

under 15 U.S.C. § 1681e(a).

125). Additionally, Defendant's failure to properly safeguard the information of

Plaintiff(s) constitutes a violation of the Maryland Consumer Protection Act, Md. Code Ann.,

Com. Law § 13-101, et seq., i.e., an unfair or deceptive trade practice by failing to safeguard an

on-going consumer service. Accordingly, relief under Md. Code Ann., Com. Law § 13-303 is

warranted to prevent Defendant's from forcing Plaintiff 's to subject themselves to arbitration.

## GENERAL ALLEGATIONS

126). Equifax, a global corporation, "organizes, assimilates and analyzes data on more

than 820 million consumers and more than 91 million businesses worldwide, and its database

includes employee data contributed from more than 7,100 employers."

(http://www.equifax.com/about-equifax/company-profile/ (September 11, 2017)), **and expanded**

**to include between January 23, 2020 and January 22, 2024, as to also include but not mited**

**to the EXTENDED CLAIMS PERIOD CLAIMS.** . More specifically, the Plaintiff Dr. Keenan

Cofield continued to date to suffer from said original breach and supplemented uncontrolled

breach of their personal data and information. Plaintiff Dr. Cofield complained to the FTC, IRS

and various other federal agencies as described herein, even years **AFTER** the First settlement,

and an ADDITIONAL NEW Count and Issues that occurred indicating a tax fraud or tax fraud

reporting claim scheme by Equifax to double claims for settlement in excess of the settlement

amount is fraud, tax cheats. Here is the breakdown of the settlements paid by Equifax and what

they reported to the IRS: **Kevin L. Cofield, Berri A. Wells, LaVerne Thompson**-settled for $2000.00 Equifax claimed and filed or reported a loss of $4000.00, Dr. Keenan Cofield settled $3500.00 and Equifax illegally claimed and reported a loss of $7000.00. **The Plaintiff(s) filed in recent months various Complaints with the IRS, and other Federal agencies, including the U.S. Postal Inspector Offices, and others on the subject of ID fraud, theft and use of name, social security numbers, along with DIRECTLY filing several online and email Complaints to Equifax and their counsel at that time regarding to the tax claim scheme by Equifax.**(See **COUNT 21-EXHIBITS & ATTACHMENTS**)

127). The data Equifax stores includes Plaintiff's personal identifying information, such as names, full Social Security numbers, birth dates, addresses, driver's license numbers, and credit card numbers (collectively, "PII"). At all relevant times, Equifax knew or should have known that the PII it collected and stored is valuable, highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties.

128). In 2011, the State of Maryland Department of Human Resources partnered with Equifax to increase efficiencies and reduce fraud with regard to the distribution of government entitlement benefits to Maryland recipients. (See Credit Rating Firm Helps State Validate Welfare Recipients, Rebecca Lesner, MARYLANDREPORTER.COM, June 30, 2015, available at: http://marylandreporter.com/2015/06/30/credit-rating-firm-helps-state-validate-welfarerecipients/).  Maryland consumers therefore have a unique relationship with Equifax.

129). On July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiff's sensitive personal information including Plaintiff's name, full Social Security number, birth date, address, and, upon belief, his driver's license number and possibly one or more of his credit cards, had been breached or "hacked" by a still unknown third party.

130). Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted. As of the filing of this Complaint, that investigation remains ongoing and has yet been completed despite over six weeks elapsing since the initial breach. **A breach also occurred in March, 2017 at Equifax, to date.**

131). On September 7, 2017, major news outlets began reporting about the July 29, 2017 incident. (See, e.g., Massive Equifax Data Breach Could Impact Half of the U.S. Population, Alyssa Newcomb, NBCNEWS, Sept. 7, 2018, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-spopulation-n799686).

132). For Plaintiff(s), these news stories were the first time that they had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

133). After Equifax discovered the breach but before notifying Plaintiff, Class Members, and all other consumers, three (3) Equifax executives, including the Chief Financial Officer, John Gamble, sold shares of Equifax stock worth a combined $1,800,000. (See, e.g., Equifax Faces Multibillion-Dollar Lawsuit over Hack, Polly Mosendz, BLOOMBERG, Sept, 8, 2017, available at: ccccc).

134). Equifax's decision to wait six (6) weeks after the alleged data breach before informing all consumers of the same was willful, or at least negligent. Further, by depriving Plaintiff's timely information about the breach, Equifax subjected each consumer to a concrete informational injury, as these consumers were deprived of their opportunity to meaningfully

consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under FCRA to prevent further dissemination of their private information.

135). Equifax has been subject to numerous allegations regarding data breaches in the past. (See, e.g., A Brief History of Equifax Security Fails, Thomas Fox-Brewster, FORBES, Sept. 8, 2017, available at: https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-databreach-history/#63dc4270677c). In light of Equifax's continual failure to ensure the integrity of its file storage systems given known defects in those systems, Equifax recklessly, willfully, or at the very least, negligently failed to use reasonable care or to enact reasonable procedures and/or technological safeguards to ensure that consumer reports would only be provided for a permissible purpose. By failing to establish reasonable procedures to safeguard individual consumer's private information, Equifax deprived millions of consumers of a benefit conferred on them by Congress, which, now lost, cannot be reclaimed.

136). Equifax knew or should have known that failing to protect consumers' PII from unauthorized access would result in a massive data breach and would expose consumers to serious harm such as identity theft.

137). The unauthorized disclosure and dissemination of private credit information causes immediate harm. At the time that the unauthorized breaches occurred, Plaintiff's began to incur, and continue to incur, such harm

138). Furthermore, the PII that unauthorized third parties took from Equifax includes multiple types of sensitive information on a single person, the aggregate value of which is greater than the sum of each individual datum. This further exacerbates the extent of Plaintiff's injuries.

139). Defendant's acts and omissions have diminished the value of Plaintiff's PII.

33). As a direct and proximate result of Equifax's acts and/or omissions, Plaintiffs have suffered imminent and impending injury arising from the subsequently increased risk of future fraud, identity theft and misuse of their PII.

140). On September 7, 2017, Equifax began to offer consumers like Plaintiff's an allegedly dedicated secure website where consumers could determine if their PII was compromised (https://www.equifaxsecurity2017.com) and offer consumers "free" credit monitoring through an Equifax product, TrustedID Premier (https://www.equifaxsecurity2017.com/enroll/), for one year.

141). However under the guise of providing victims the opportunity to mitigate their damages, Equifax offered Plaintiff(s) free access to its TrustedID Premier service, the terms and conditions of which require that the victims, including Plaintiff's, waive their right to bring or participate in a class action lawsuit and require them to submit to arbitration (http://www.equifax.com/terms/). These actions are yet another avenue by which Equifax has deprived Plaintiff (s) of the ability to avail themselves of the remedies available under FCRA and to prevent further dissemination of their private information. **This is why this action is private.**

142). Equifax Credit Information Services, Inc. was negligent in allowing my data to be breached under Maryland, and Alabama consumer's laws. The nature of the breach, including the release and access of permanent personal data, such as Plaintiff(s) social security numbers, etc., has resulted in significant damage. Plaintiff Kevin L. Cofield, Sr. birthdate is being reported by Transunion on Plaintiff Dr. Keenan Cofield credit report and profile. This is not the only discrepancy between the two Plaintiff(s) credit reports and profiles. This has been going on with other area of the credit report or profile being reported by both Defendants Equifax and Experian.

143).   Plaintiff(s) Kevin L. Cofield, Sr. and Dr. Keenan Cofield, have written, called, faxed, disputed incorrect to inaccurate information reported to and/or by each of the credit bureau Defendant's at least some 25 to 50 times, with information never being corrected from mixed file information being reported to disputed matters, like the Plaintiff Kevin L. Cofield, Sr. who paid off his APGFCU auto loan 6 to 8 weeks, but Equifax is still reporting the debt that caused the Plaintiff Kevin L. Cofield, Sr. to be denied several loans or other credit because of the negative information being reported and/or not being updated or falsely being reported by APGFCU to date. That car loan still appears on Plaintiff(s) Kevin Cofield's credit report as a debt.

144).   The inaccurate reporting by APGFCU for years truly harmed Plaintiff Kevin L. Cofield, Sr. This derogatory item severely reduced the Plaintiff's credit scores and caused him to be denied loans, credit etc. Now Ally is reporting derogatory and negative information on both Plaintiff(s) Dr. Keenan Cofield, and Kevin L. Cofield, Sr.

145). As a result of this negative credit reporting, Plaintiff's Kevin L. Cofield, Sr. and Dr. Keenan Cofield suffered actual damages.

**Equifax's/Transunion and Experian Double Standard and Willful Misconduct**

146). Equifax, Transunion, and Experian's each have had substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and system that led to the Equifax data breach.

147). While Equifax, Transunion and Experian claims that partial matches are reasonable because of possible creditor transcription error – a theoretical typo transposing two social security digits – Equifax, Transunion and Experian do not possess any actual research or data to support its contrived risk of error.

148). In contrast, Equifax, Experian and Transunion all have substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

149). As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against Equifax and other Defendants because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Equifax's responsibilities to prevent mixed files. Only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread violations of the FCRA, including the creation of mixed files and then furnishing them to users who did not have a permissible purpose to view the information of the consumer. In the Matter of Equifax Credit Information Services, Inc., 12 F.T.C. 577 (Aug. 14, 1995). This enforcement action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

150). Despite the 1992 Agreement of Assurances and the 1995 Consent Order, Equifax's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. It does this in order to sell more credit reports.

151). Equifax, Experian and Transunion ALL know that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

152). Equifax has been sued repeatedly for failing to prevent mixed consumer files, including the $18.6 million verdict on July 26, 2013 in Miller v. Equifax Information Services,

LLC, 3:11-cv-1231 (D. Or. 2011) (Docket No. 79). Transunion and Experian both have been sued multiple times for failing to prevent and correct mixed consumer files.

153). The recent verdict from Oregon is not the only multi-million dollar verdict against Equifax in a mixed file case. In November 2007, a jury found in favor of another consumer with a mixed file and awarded her $219,000 in actual damages and $2.7 million in punitive damages. Williams v. Equifax Information Solutions, LLC, No. 48-2003-CA-9035-O (Orange County 2007). 1

154). These cases are representative of numerous other lawsuits around the country where Equifax has been sued for failing to prevent **mixed consumer files**. See, e.g., Apodaca v. Discover Financial Services, 417 F. Supp. 2d 1220 (D.N.M. 2006).

155). Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this Circuit. See e.g., Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235 (4th Cir. 2009); Sloane v. Equifax Info Servs,,510 F.3d 495 (4th Cir. 2007); Abraham Lopez, Jr., v. Trans Union, LLC, Civil Action No. 1:12-cv-902 (E.D. Va. 2012); Alejandro Lopez, Sr. v. Trans Union, LLC, Civil Action No. 1:12cv1325 (E.D. Va. 2012); Chaudhary v. Experian Info. Solutions, Inc., Civil No. 3:13-cv-577 (E.D. Va. 2013); Valdez-Estep v. Equifax Info. Servs., Civil No. 1:13-cv-00007 (E.D. Va. 2016); Kang v. Equifax Info. Servs., Civil No. 1:15-cv-01406 (E.D. Va. 2015); Moulvi v. Equifax Info. Servs., Civil No. 1:15-cv-01073 (E.D. Va. 2015); Barclay v. Equifax Info. Servs., Civil No. 1:15- 1 cv-00691 (E.D. Va. 2015); Robinson-Huntley v. Equifax Info. Servs., Civil No. 1:15-cv-00626 (E.D. Va. 2015).

156). Equifax, Experian and Transunion knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

157). Despite these lawsuits and multi-million dollar verdicts, Equifax, like Transunion and Experian have not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

158). Upon information and belief, Equifax, and Transunion have not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

159). Accordingly, Equifax's, like Transunion violation of 15 U.S.C. § 1681e(b) was willful and Equifax and Transunion is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

160). Equifax's and Transunion failure to modify its procedures caused substantial harm to the Plaintiffs.

**Consumer Victory: Equifax Must Pay $ 2.9 million for Mixing Up Credit Files, The Consumer Advocate, Vol. 14, No. 1, National Association of Consumer Advocates (Jan.- Mar. 2008), at 14; Consumer Wins Fight For Credit Report Accuracy, Privacy Times, Dec. 6, 2007.**

### Experian's Double Standard and Willful Misconduct

161). Experian has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

162). As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. FTC v. TRW, Inc., 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to make the following practice changes:1. Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files, including **but not** limited to:

a. Continuing its current efforts to improve its information gathering, storing, and generating systems to reduce the occurrence of Mixed Files, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information;3 and

b. Not later than July 31, 1992, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Files, once known; …

iv. Employing reasonable procedures designed specifically to reinvestigate disputes from Consumers that result from Mixed Files. …

For the five (5) year period following the entry of [the Consent Order], [Experian] shall measure, monitor, and test the extent to which changes in [Experian's] computer system, including its algorithms, reduce the incidence of Mixed Files. FTC, 784 F. Supp., 362-364 (N.D. Texas 1991).

163). Similarly, another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. See TRW, Inc. v. Morales, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

164). Despite the consent orders with the FTC and the Attorneys General, Experian's

computer system causes these mixes because it does not require or use full identifying

2. Mixed File is defined in the Consent Order as a Consumer Report in which some or all of the

information pertains to Persons other than the Person who is the subject of that Consumer

Report. Id. at 362.

3. Full Identifying Information is defined in the Consent Order as full last and first name; middle

initial; full street address; zip code; year of birth; any generational designation; and social

security number. Id. information for a potential credit grantor's inquiry even when unique

identifiers such as a full social security number are present. It does this in order to sell more

credit reports.

165). Experian knows that their computer system causes one individual's credit report to

be confused with another individual's credit report causing a "mixed file".

166). Experian has been sued repeatedly for failing to prevent mixed consumer files. See,

e.g., Calderon v. Experian Info. Solutions, Inc., 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho

2012); Howley v. Experian Information Solutions, Inc., Civil Action No. 09-241 (D.N.J. filed

January 16, 2009); Ainsworth v. Experian Info. Solutions, Inc., 2011 U.S. Dist. LEXIS 63174

(C.D. Cal. 2011); Novak v. Experian Info. Solutions, Inc., 782 F. Supp. 2d 617 (N.D. Ill. 2011);

Comeaux v. Experian Info. Solutions, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004);

Cartwright v. Experian, et al., Case No. CV 09-427 (C.D. Cal. 2009); Campbell v. Experian Info.

Solutions, Inc., 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); Jensen v. Experian

Info. Solutions, Inc., 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001).

167). Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

168). Despite these lawsuits, Experian **has not** significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

169). Upon information and belief, Experian has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

**COUNT 21** 15 U.S.C. 1681, et seq. FCRA Defendant's compromise of Plaintiff's personal information that was discovered on or before, during and/or after July 29, 2017 by Defendant violates 15 U.S.C. 1681e(a).

**COUNT 22** Md. Code Ann., Com. Law § 13-303, et seq. Defendant's compromise of Plaintiff's personal information is an unfair or deceptive trade practice, as Defendants failed to maintain Plaintiff's personal information.

**COUNT 23** Negligence Defendant's compromise of Plaintiff's personal information is a breach of Defendant's duty of care to protect Plaintiff's PII, which directly and proximately caused Plaintiff's injuries.

**COUNT 24** Gross Negligence Defendant's intentional, willful and wanton misconduct regarding the compromise of Plaintiff's personal information is a breach of Defendant's duty of care to protect Plaintiff's PII, which directly and proximately caused Plaintiff's injuries.

**COUNT 25** Punitive Damages Defendant's compromise of Plaintiff's personal information evidences conscious and deliberate wrongdoing constituting actual malice against Plaintiff.

**COUNT 26** Gross Negligence when Defendants Transunion, Equifax and Experian failed to establish or follow procedures to assure maximum accuracy in the preparation to release of the credit reports and credit files they published and maintained concerning the Plaintiff's, violating 15 U.S.C. 1681e(b). **The illegal to unlawful conduct described above and throughout this Complaint is prohibited activity by a credit bureau or reporting agency.**

<u>**COUNT 21: VIOLATION OF 15 U.S.C. 1681, et seq.**</u>
<u>**against Defendants Equifax**</u>

170). Plaintiff(s) restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

171). Based upon Equifax's failure to have reasonable procedures in place, Plaintiff's private information was compromised, and neither Plaintiff received notice of the data breach, except through media, approximately six (6) weeks after the breach occurred.

172). As a result of each and every willful violation of FCRA, Plaintiffs are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3). This is a prohibited activity by a credit bureau or reporting agency.

173). As a result of each and every negligent non-compliance of the FCRA, Plaintiffs are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

<u>**COUNT 22: MARYLAND CONSUMER PROTECTION ACT**</u>

174). Plaintiff(s) restate any and all allegations contained in all preceding and subsequent paragraphs as if fully restated herein.

175). This Count is brought on pursuant to the Maryland Consumer Protection Act, Md. Code Ann., Com. Law ("CL") § 13-101 et seq.

176). Plaintiff is a "consumer" within the meaning of CL § 13-101(c).

177). Equifax is a "merchant" as that term is defined by CL § 13-101(g), as Equifax was, at all times relevant herein, engaged in soliciting "consumer services" as that term is defined in CL § 13-101(d) by soliciting an ongoing service, credit reporting and data aggregation of Plaintiff's personal information, to consumers in Maryland for primarily personal use within the meanings specified in CL § 13-101(c) and (d).

178). Equifax is also a "person" as that term is defined by CL § 13-101(h), as Equifax was, at all times relevant herein, a legal or commercial entity.

179). Equifax's breach of Plaintiff's information was deceptive and meets the requirements of CL § 13-303, which provides that no person shall commit an unfair or deceptive trade practice in connection with a consumer service. Such an unfair or deceptive trade practice by a person violates this section irrespective of whether any consumer has in fact been misled, deceived, or damaged as a result of that practice. This is a prohibited activity by a credit bureau or reporting agency.

180). As a direct and proximate result of the above violation of the Consumer Protection Act ("CPA"), Plaintiffs each have suffered injuries including, but not limited to mental anguish, emotional distress, fear, panic, stress, and the continued worry that their identities have been compromised and are being used fraudulently.

181). Equifax's actions violate the CPA, and Plaintiffs are entitled to receive actual damages, statutory damages, and attorneys' fees, expenses and costs.

182). By trying to trick Maryland and other consumers by offering a "free" service of credit monitoring into signing a broad class action waiver and/or an arbitration agreement, which would benefit only Equifax, Defendant engaged in a class bait and switch which is prohibited under the Maryland Consumer Protection Act.

183). Defendant was on notice of prior administrative and judicial determinations that such bait and switch tactics violate the Maryland Consumer Protection Act.

184). Defendant Equifax's actions as described herein, supra, further warrant Plaintiffs requesting that this Court also provide a declaration pursuant to CL § 13-101 et seq. that any arbitration provision that Plaintiff(s) may be subjected to due to their use of https://www.equifaxsecurity2017.com/ is void.

185). Defendants Transunion, Experian and APGFCU also as detailed or described herein their conduct too is in direct violation of the Maryland Consumer Protection Act.

## COUNT 23: NEGLIGENCE

186). Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

187). Defendant or Defendants each owed Plaintiff's a duty to, inter alia, a. keep consumers' PII confidential; b. enact appropriate measures and safeguards to adequately protect consumers' PII from unauthorized disclosure, including via theft or data breach; and c. timely and adequately advise consumers of any unauthorized dissemination of that PII.

188). Defendant knew or should have known that failing to adequately protect Plaintiff(s) PII would result in its unauthorized dissemination, including via theft or data breach, and would expose consumers to serious and ongoing harm.

189). Defendant breached its legal duties by failing to safeguard, protect, and keep confidential Plaintiff's PII, and by failing to adequately and timely advise Plaintiff's that their data had been compromised and disclosed without authorization.

190). As a direct and proximate cause of Defendant's negligence, Defendants individually and/or jointly in each applicable COUNTS of this Complaint, created a foreseeable risk of harm to its consumers, including Plaintiff(s). Plaintiff's injuries were caused solely by the Defendants, without any wrongdoing on the part of Plaintiff(s)

191). As a direct and proximate result of Defendant's negligence, Plaintiff(s) each have suffered injury and incurred damages, including **but not** limited to the significantly decreased value of their PII and the future costs associated with protecting and reestablishing their financial identities. This Count also includes the Defendants who mixed credit profile information reported on another Plaintiff(s) credit report or profile. This is a prohibited activity by a credit bureau or reporting agency.

## COUNT 24: GROSS NEGLIGENCE

192). Plaintiff restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

193). Defendants owed Plaintiff(s) a duty to, inter alia, a. keep consumers' PII confidential; b. enact appropriate measures and safeguards to adequately protect consumers' PII from unauthorized disclosure, including via theft or data breach; and c. timely and adequately advise consumers of any unauthorized dissemination of that PII.

194). Defendants knew or should have known that failing to adequately protect Plaintiff(s) PII would result in its unauthorized dissemination, including via theft or data breach, and would expose consumers to serious and ongoing harm.

195). Defendants breached its legal duties and engaged in intentional acts of gross negligence and reckless, intentional, willful, and wanton misconduct, on a continuing basis by failing to safeguard, protect, and keep confidential Plaintiff's PII, and by failing to adequately and timely advise Plaintiff(s)  that their data had been compromised and disclosed without authorization. This is a prohibited activity by a credit bureau or reporting agency.

196). Defendants' grossly negligent conduct directly and proximately caused the injuries sustained by Plaintiff's. Plaintiff's injuries were caused solely by grossly negligent conduct of the Defendants without any wrongdoing on the part of Plaintiff(s).

197). As a result of Defendant's grossly negligent conduct, Plaintiff(s) have suffered injury and incurred damages, including but not limited to the significantly decreased value of their PII and the future costs associated with protecting and reestablishing their financial identities.

## COUNT 25: PUNITIVE DAMAGES

198). Plaintiff(s) restates all allegations contained in the preceding and subsequent paragraphs as if fully restated herein.

199). Defendant's conduct in failing to safeguard Plaintiff's valuable and highly sensitive PII, despite its knowledge that such safeguards were required and that a massive data breach was foreseeable, evidences evil motive, intent to injure, and ill will, and constitutes actual malice.

200). Defendant's conduct in refusing to alert Plaintiff(s) of the data breach that occurred on **July 29, 2017 to date** until at least six (6) weeks after the breach, and only after numerous news articles drew attention to the issue, evidences evil motive, intent to injure, and ill will, and constitutes actual malice

201). Defendant's conduct in willfully, intentionally, and knowingly depriving consumers, including Plaintiff(s), of the opportunity to seek any remedies available to them under FCRA evidences evil motive, intent to injure, and ill will, and constitutes actual malice.

202). That Defendants and three of its executives consciously, deliberately, and maliciously profited, at Plaintiff's expense, by selling $1,800,000 of shares in days following the data breach, further evidences evil motive, intent to injure, and ill will, and constitutes actual malice. The **Plaintiffs each are entitled and seek *"Punitive Damages"* from each Defendant as it relates to each and every Count 1-6.**

## COUNT 26: VIOLATION OF 15 USC 1681e(b)
## EQUIFAX, EXPERIAN, TRANSUNION & APGFCU

203). Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

204). The Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiffs.

205). As a result of this alleged conduct, Plaintiff's suffered actual damages, including but not limited to damage to their credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, loans, credit cards and aggravation, inconvenience, embarrassment and frustration.

206). The Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o. This is a prohibited activity by a credit bureau or reporting agency.

207). The Plaintiff(s) are entitled to recover actual damages, statutory damages, costs, and his attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff(s) **each** demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems proper.

**1). The Plaintiff(s) are willing to discuss and open to a reasonable settlement offer by the Defendants, or BEST OFFER.**

**2). Enter an Order declaring the arbitration provisions waiver provisions obtained by enticing consumers to sign up for free credit monitoring void pursuant to Md. Code Ann. Com. Law Section 13-303 as alleged in Count 22; and**

3). Plaintiff(s) require, and that the Court Order the Defendants **each** REMOVE and delete any and all *Inquiries* and correct and remove any and all disputed accounts, or other misinformation as previously disputed.

4). Plaintiff Kevin L. Cofield, Sr. require and demand the Court to Order the Defendants to correct his credit profile and direct that his Ally, and APGFCU car loan shows the debt paid off back in August in FULL, immediately.

5). That the Court Order each Defendant correct its credit reports and profiles of Dr. Keenan K. Cofield, correct DOB, and Social Security Number is reported correctly and not that of his brother Kevin L. Cofield, Jr. or anyone else's.

6). That the Court further Order each Credit Bureau Defendant search, locate and re-report each and every **GOOD STANDING DEBT OR ACCOUNTS-PAID IN FULL that had been reported or listed in good standing**, Dr. Keenan K. Cofield had that was deleted, purged or

removed **without** any notice or other dispute by him, by each Defendant except APGFCU, from his credit file, **without** just cause.

8). Enter a Preliminary and Permanent injunction and/or declaratory judgment prohibiting the Defendants mainly Equifax from continuing to bait and switch consumers into signing any waiver or arbitration agreement.

9). Plaintiffs demand judgment is entered against each Defendant in the amount of $500,000 dollars in Compensatory damages each Count.

10). For any and all other relief this Court may deem just and proper.

11). The actions herein destroyed the Plaintiff Dr. Keenan K. Cofield credit score, rating and status.

12). Award Punitive Damages against each EQUIFAX Defendant for **$2,500,000 dollars**.

13). Award statutory damages against Defendant for the allegations contained in Count 22 of at least $7,500 dollars.

14). Plaintiff(s) **Dr. Keenan Cofield,  and Kevin L. Cofield, Sr**. seek the maximum  of $20,000 dollars for TIME SPENT during the EXTENDED CLAIMS PERIOD as indicated.

15). Plaintiffs Dr. Keenan Cofield, LaVerne Thompson, and Kevin L. Cofield, Sr. demand damages against EQUIFAX in the amount of **$25,000,000 dollars in Compensatory Damages** for the continued breach and losses, but for the inflated tax fraud claim scheme.

**TRIAL BY JURY IS DEMANDED.**

# AMENDED AND/OR SUPPLEMENTAL COMPLAINT-ADDENDUM
## COUNTS 21 THRU  26

207).  Plaintiffs restates **each** of the allegations in the preceding paragraphs & Counts as if set

forth at length herein, in further support of this Amended and/or Supplemental Count to the

Verified Complaint, and says:

208).  Plaintiff(s) does hereby Amend and/or Supplement the Original Complaint to add the

following **NEW Defendants** to this cause of action:

b). **CONSUMER FINANCIAL PROTECTION BUREAU**
1625 Eye Street, N.W.
Washington, DC 20006
**and**

c). **FEDERAL TRADE COMMISSION**
600 Pennsylvania Ave. NW
Washington, DC 20580
 **and**

209). The conducts and acts described 1-103 by the Defendants violate the provisions of various

laws and statutes more specifically, **Dodd-Frank Wall Street Reform and Consumer**

**Protection Act and The Federal Trade Commission Acts of 1914 as so Amended and/or**

**Codified** into various other Federal Acts and Statutes to rules passed by Congress and each

agencies that such statutes or rules are applicable to.

210). Credit Reporting agencies or companies serve as a major piece of our financial

infrastructure in America, but less regulatory scrutiny and passes by the Defendants as U.S.

government regulators over them named in paragraph 102, where justice and protection seemed

blind.

211). Both the Defendants **Consumer Financial Protection Bureau and Federal Trade**

**Commission** as federal government agencies have a duty and responsibility for consumer

protection in the financial sector, as federal regulatory bodies. The NEW Defendants have a duty

to protect consumers from unfair, deceptive, or abusive practices and to take action when they break the laws.

212). The Defendants **Consumer Financial Protection Bureau and Federal Trade Commission,** in the instantly above described acts, conduct and complaint, did little to nothing as overseers and regulators over the credit bureaus, banks, to ensure each and All credit bureaus and reporting agencies and bank, protected consumers personal data, information, credit reports, credit profiles, and mixed credit report profile information disputed and gone un corrected for months to years, as in the specific case of Plaintiff(s) Kevin and Dr. Keenan Cofield. The **Consumer Financial Protection Bureau and Federal Trade Commission** never cracked down on the credit bureaus, though Consent Decrees and other others are in place, but un enforced to some items.

213). The **Consumer Financial Protection Bureau and Federal Trade Commission** both neglected and failed their legal to congressional duties to protect these Plaintiff(s) but all American consumers. Each of the Plaintiff(s) are continuing to be adversely affected not just by the breach but gross negligence on parts of The credit bureau/credit reporting agencies and the named bank in this action, who to date, the APGFCU has not like the credit bureaus updated its records and even when 1 or more accounts **PAID** have been disputed over the past 3 months, nothing changed, thus Plaintiff Cofield stills suffer and impacted by the delays.

## AMENDED RELIEF

214). **WHEREFORE,** the Plaintiff(s) jointly pray that this Honorable Court direct and/or enter an Order, Declaratory Judgment or other action that the **Consumer Financial Protection Bureau and Federal Trade Commission** shall ensure and have greater oversight over any and all credit reporting agencies, and that the U.S. government agency Defendants **shall** do more in

making sure the credit reporting agencies and others under their control or jurisdiction **shall** put additional measures in place to protect consumer information, data, and credit profiles of the Defendants and other consumers; 2). That the **Consumer Financial Protection Bureau and Federal Trade Commission shall** have in place rules or apply for Congressional actions that require, any and all credit reporting agencies or any other financial agency or company under their jurisdiction **shall immediately** report to these and other federal agencies **any time** there is a breach, hack, or other actions whereas the records of that agency or credit reporting company has been breached or compromised; That the Court shall under a possible Consent Decree that any violation or violations thereof as to the complaint and relief described herein, shall impose automatic sanctions against each and any credit reporting agency that violates any Order, and all affected **shall be** compensated accordingly to be determined by the parties, government and court.

# SECOND AMENDED AND/OR SUPPLEMENTAL COMPLAINT TO COUNT 21 THRU 26

**215).** The Plaintiff(s) does hereby add and amend Plaintiff(s) Chere Nedd and Kayla Nedd to this portion of the Complaint.

## T-MOBILE, INC.

216). All the Plaintiff(s) assert they have, continue to have and/or had accounts with Defendants T-MOBILE that was hacked and/or compromised dating back August 2018- November 2019, January thru August 2021, January, February, March, and April 28, 2023 to date, among several other reported and unreported data breach dates. Defendants T-MOBILE admit to many of the unprotected unauthorized data breaches of consumers/customers personal information. Data breaches are normal for Defendants T-MOBILE.

217). Plaintiff Dr. Keenan Cofield lost tens of thousands of dollars as an end result of the many breaches of my phones and accounts from hackers who lived in the Plainitff(s) Dr. Cofield accounts and various phone lines for years. Plaintiff Dr. Cofield filed many FTC, IRS and local police department complaints to complaints and claims with many banks, companies to corporations, whereas the hackers changed the names, addresses to phone numbers, mailing addresses and more illegally to control access to the Plaintiff(s) phone, phone lines to accounts.

218). The actions and gross negligence described herein of T-MOBILE are far worse than those of Equifax.

219). The Plaintiff(s) each do hereby adopt and further incorporate any and all arguments

relative to the various State and Federal laws applicable to data breaches laws and statutes.

**WHEREFORE,** the Plaintiff(s) **each** demand Judgment against the **T-MOBILE** Defendants in

the amount of $75,000,000 million in Compensatory Damages and $150,000,000 million dollars

in Punitive Damages, plus additional relief as set forth in this Complaint under COUNTS 21 thru

26.


Dated this the 06th day of January, 2024


## VERIFICATION OF COMPLAINT

*Cheve Nedd,*

I, Dr. Keenan Cofield, Kayla Nedd, Orian D. Cofield, Arivette L. Cofield, Luluk Novi
Fatmawati, Kevin L. Cofield, Sr.,  LaVerne Thompson,  Queen Billy, do hereby
certify that the above and foregoing VERIFIED COMPLAINT is true and correct to
the best of my knowledge, information and belief, under the penalty of perjury
and that I am over the age of (21) years and I am competent to testify to the
alleged facts herein.  **THIS CLAIM IS SUBJECT TO BE AMENDED AND/OR
SUPPLEMENTED AS MEDICAL TREATMENTS, AND OTHER SERVICES CONTINUE.**

**The Plaintiffs/Claimants assert and feel confident that this matter can be
resolved to the satisfaction of all parties quietly without the need for any long
drawn out litigation. But if necessary the Claimant is ready to file a lawsuit and
issue Press Releases if forced to do so.**

**The Defendants/Respondents make a fair and reasonable offer, this matter is
over.**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MD

DR. KEENAN COFIELD, JD/Ph.D/Psy.D/DD
PLAINTIFF(S)/CLAIMANTS

Vs                                    CASE NUMBER: **24-C-24-** *000164*

PASSPORT MOTORS, INC., et. al.

DEFENDANTS

## <u>LINE</u>-PLAINTIFF(S) DEMAND FOR TRIAL BY JURY

COMES now the Plaintiff(s) Dr. Keenan Cofield and all others, in the above styled matter

seeking to <u>DEMAND A TRIAL BY JURY on all COUNTS AND ISSUES</u>.

### <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a copy of the above and foregoing has been filed, HAND-DELIVERED and served upon the Baltimore CITY Court in Baltimore, MD, and any and ALL other Defendants or Defendants Counsel with SUMMONS on or about this the 6th day of January, 2024 and/or placed in the United States mail postage prepaid, to all Defendants so served, and served.

Dr. Keenan Cofield, JD/Ph.D/Psy.D/DD
1236 Kendrick Rd.
Rosedale, MD 21237
443-554-3715
Email: Supremegrandbishop@gmail.com

Dr. Keenan Cofield

Kayla Nedd

LaVerne Thompson

Luluk N. Fatwamati

Dr. Keenan Cofield

# IN THE CIRCUIT COURT FOR BALTIMORE CITY, MD

DR. KEENAN COFIELD, JD/Ph.D/Psy.D/DD
PLAINTIFF(S)/CLAIMANTS

Vs                                    CASE NUMBER: **24-C-24-** **000162**

PASSPORT MOTORS, INC.,  et. al.

DEFENDANTS

## PLAINTIFF(S) REQUEST FOR A JURY TRIAL SCHEDULING & SETTLEMENT HEARING ORDER

COMES now the Plaintiff(s) Dr. Keenan Cofield and all others, in the above styled matter

seeking to **DEMAND A TRIAL BY JURY on all COUNTS AND ISSUES, AND SCHEDULING AND**

**SETTLEMENT CONFERENCE ORDER.**

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been filed, HAND-DELIVERED and served upon the Baltimore CITY CIRCUIT Court in Baltimore, MD, and any and ALL other Defendants or Defendants Counsel with SUMMONS on or about this the 6th day of January, 2024 and/or placed in the United States mail postage prepaid, to all Defendants so served, and served. **COPY OF PLAINTIFFS NOTICE OF FILING OF DISCOVERY.**

Dr. Keenan Cofield, JD/Ph.D/Psy.D/DD
1236 Kendrick Rd.
Rosedale, MD 21237
443-554-3715
Email: Supremegrandbishop@gmail.com

Dr. Keenan Cofield

Kayla Nedd

LaVerne Thompson

Luluk N. Fatwamati

Dr. Keenan Cofield